**MAX DAETWYLER CORP., A New York Corporation,**

v.

**R. MEYER, A West German Corporation.**

**Appeal of Rolf MEYER.**

**No. 84–1024.**

United States Court of Appeals, Third Circuit.

Argued Nov. 1, 1984.

Decided May 22, 1985.

Rehearing and Rehearing In Banc Denied June 17, 1985.

As Amended June 18, 1985.

Peter T. Cobrin (Argued), Stempler & Cobrin, New York City, for appellant.

Manny D. Pokotilow (Argued), Caesar, Rivise, Bernstein & Cohen, Ltd., Philadelphia, Pa., for appellee.

Before GARTH and SLOVITER, Circuit Judges, and BARRY, District Judge.[*]

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal comes to us as a certified question pursuant to 28 U.S.C. § 1292(b). We are asked to decide whether personal jurisdiction over an alien defendant, who is being sued on a claim arising under federal law, may be founded on the alien's aggregated contacts with the United States, regardless of the sufficiency of his contacts with the state in which the district court sits.

We hold that in the absence of a governing federal statute providing for nation-wide service of process, in personam jurisdiction may not rest upon an alien's aggregated national contacts. We also hold that personal jurisdiction in Pennsylvania may not be obtained under the Pennsylvania long-arm statute, 42 Pa.Cons.Stat.Ann. § 5322 (Purdon 1981).

### I.

Max Daetwyler Corporation is a New York corporation that manufactures and sells doctor blades. Doctor blades are devices with reduced thickness edges used to wipe excess ink from the printing surfaces of a rotogavure printing form. Daetwyler commenced this patent infringement action in the Eastern District of Pennsylvania against Rolf Meyer, a West German citizen doing business as a sole proprietor. Meyer manufactures and sells reduced thickness edge doctor blades.

The manufacture of Meyer blades takes place in Germany and the blades are thereafter sold in the United States by an inde-

[*] Honorable Maryanne Trump Barry, United States District Judge for the District of New Jersey, sitting by designation.

pendent American distributor, Henry P. Korn of New York. Sales of Meyer blades are also made by Uddeholm Corporation, a Delaware corporation which Daetwyler alleges acts as a middleman or distributor for Meyer. Uddeholm takes title to the blades in West Germany, warehouses them in Cleveland, and ships them from there to domestic customers. On occasion, Uddeholm instructs Meyer to ship doctor blades directly to American customers, but no such direct shipments have been sent by Meyer to Pennsylvania.

Meyer initially moved to dismiss this action for lack of in personam jurisdiction. Meyer contended that he had never been to Pennsylvania, had no affiliating contacts with Pennsylvania, and had never done business in Pennsylvania. Daetwyler argued that jurisdiction over Meyer was properly asserted on the basis of both the "transacting business" provision of the Pennsylvania long arm statute, 42 Pa.Cons. Stat.Ann. § 5322(a)(1) (Purdon 1981)[1], and the totality of Meyer's contacts with the

United States as a whole. Although the district court concluded that Meyer had insufficient contacts with Pennsylvania to support personal jurisdiction founded on the state long-arm statute, it nonetheless held that Meyer's aggregate national contacts yielded personal jurisdiction to determine a federal claim asserted against an alien defendant. *See Max Daetwyler Corp. v. R. Meyer*, 560 F.Supp. 869, 870 (E.D.Pa.1983).

Upon motion by Meyer, the district court certified the question of in personam jurisdiction for appeal to this court. *See Max Daetwyler Corp. v. R. Meyer*, 575 F.Supp. 280 (E.D.Pa.1983). We, in turn, granted Meyer's petition for leave to appeal pursuant to 28 U.S.C. § 1292(b).[2]

## II.

The issue before this court is whether, in the enforcement of claims arising under federal law, a federal court is bound to follow the particular jurisdictional princi-

---

1. The Pennsylvania long-arm statute, 42 Pa. Cons.Stat.Ann. § 5322, provides in pertinent part:

 § 5322. Bases of personal jurisdiction over persons outside this Commonwealth

 (a) *General rule.*—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

 (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

 (i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

 (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

 (iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

 (iv) The engaging in any business or profession within this Commonwealth, whether or

 not such business requires license or approval by any government unit of this Commonwealth.

 (v) The ownership, use or possession of any real property situate within this Commonwealth.

2. Although in the present case the underlying substantive claim is one of patent infringement, this interlocutory appeal properly lies in this court. The Federal Courts Improvement Act of 1982 Pub.L. No. 97–164, Title I, § 127(a), 96 Stat. 37 (1982), codified at 28 U.S.C. § 1295, vests exclusive appellate jurisdiction over patent matters in the Court of Appeals for the Federal Circuit. The Federal Circuit's jurisdiction over interlocutory appeals, however, is confined to those cases arising under 28 U.S.C. § 1292(a). Certified interlocutory appeals pursuant to 28 U.S.C. § 1292(b) are not within the Federal Circuit's jurisdiction. *See* 28 U.S.C. § 1292(c) (1982). The Federal Circuit itself has acknowledged that it lacks jurisdiction to entertain questions certified under section 1292(b). *See Harrington Manufacturing Co. v. Powell Manufacturing Company, Inc.*, 709 F.2d 710 (Fed.Cir. 1983). We note that a proposed bill, Technical Amendments to the Federal Courts Improvement Act of 1982, H.R. 4222, 98th Cong., 2d Sess. (1984) would extend the jurisdiction of the Federal Circuit to include certified interlocutory appeals. That bill, however, has failed, as yet, to gain Congressional approval.

ples of the state in which it sits or whether it is free to develop a federal test of amenability to suit. The question is, in effect, one of the proper influence of the source of law—state or federal—in determining the bases for the personal jurisdiction in the federal courts.

■ The central concern of a jurisdictional inquiry is the relationship among the defendant, the forum, and the litigation. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Shaffer v. Heitner*, 433 U.S. 186, 209, 97 S.Ct. 2569, 2582, 53 L.Ed.2d 683 (1977). Because personal jurisdiction necessarily addresses both the power of the court to create or affect legal interests and the rules of competence whereby adjudicatory authority is asserted, it is tested against both constitutional and statutory standards. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors*, 647 F.2d 200, 203 (D.C.Cir.1981); Restatement (Second) of Conflict of Laws, Ch. 3, Introductory Note at 100–03 (1971).

In general, a court, confronted with a question of the sufficiency of a defendant's contacts with the forum state, would look to the state's long-arm statute and then determine whether the exercise of jurisdiction would satisfy due process. In Pennsylvania, whose jurisdictional statute expressly incorporates the federal due process standard, the inquiry is principally one into the constitutional propriety of the exercise of jurisdiction. *See Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489 (3d Cir.1985). While normally we consider constitutional issues only after considering statutory arguments, *see Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974), we are here presented with an issue where statutory and constitutional considerations are intertwined. Indeed, because of the nature of the national contacts theory, which seeks to redefine the area of minimum contacts sufficient to satisfy due process and hence to provide a federal test of amenability to

suit, a greater importance attaches to the due process inquiry at the very outset.

### A.

■ Because this action arises under the patent laws, the due process clause of the fifth amendment guides the constitutional branch of the jurisdictional inquiry. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 283 (3d Cir.1981). The fifth amendment has been construed to impose a general fairness test incorporating *International Shoe's* requirement that "certain minimum contacts" exist between the nonresident defendant and the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see also Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir.1975); *Fraley v. Chesapeake & Ohio Railway*, 397 F.2d 1, 4 (3d Cir.1968).

■ In the present case, it is the situs of the requisite minimum contacts that is at issue. Daetwyler argues that because a federal question is raised, a national contacts theory should inform the exercise of the court's jurisdiction. Under the national contacts theory, the proper inquiry in determining personal jurisdiction in a case involving federal rights is one directed to the totality of a defendant's contacts throughout the United States. *See Edward J. Moriarty & Co. v. General Tire & Rubber Co.*, 289 F.Supp. 381, 390 (S.D.Ohio 1967) ("the appropriate inquiry to be made in a federal court where the suit is based upon a federally created right is whether the defendant has certain minimal contacts with the United States...."); *see also First Flight Co. v. National Carloading Corp.*, 209 F.Supp. 730, 736 (E.D.Tenn. 1962) ("One fundamental principle of the Anglo-American law of jurisdiction is that a sovereignty has personal jurisdiction over any defendant within its territorial limits, and that it may exercise that jurisdiction by any of its courts able to obtain service upon the defendant.") The hallmark of the theory is that "it is not the territory in which a

court sits that determines the extent of its jurisdiction, but rather the geographical limits of the unit of government of which the court is a part." *Cryomedics, Inc. v. Spembly, Ltd.*, 397 F.Supp. 287, 291 (D.Conn.1975); *see also Centronics Data Computer Corp. v. Mannesmann, A.G.*, 432 F.Supp. 659, 663–64 & n. 1 (D.N.H. 1977); *Holt v. Klosters Rederi A/S*, 355 F.Supp. 354, 357 (W.D.Mich.1973); *Alco Standard Corp. v. Benalal*, 345 F.Supp. 14 (E.D.Pa.1972).

To aggregate the national contacts of an alien defendant in order to obtain personal jurisdiction may be neither unfair nor unreasonable when assessed by fifth amendment standards.[3] Although the minimum contacts test established by *International Shoe* is itself a fairness inquiry, the scope of that inquiry necessarily acknowledges that the constitutionality of a state's assertion of in personam jurisdiction reflects territorial limitations on the power of an individual state.[4] Those strictures of fourteenth amendment due process analysis which attempt to prevent encroachment by one state upon the sovereignty of another do not apply with equal force to the adjudication of a federal claim in a federal court.

*See Hanson v. Denckla*, 357 U.S. 235, 257, 78 S.Ct. 1228, 1241, 2 L.Ed.2d 1283 (Restrictions on state jurisdiction "are more than a guarantee of immunity for inconvenience or distant litigation. They are a consequence of territorial limitations on the power of the respective States.") Nor, unless state boundaries are themselves deemed to correspond to areas of fundamental fairness, should an alien defendant's preference for a particular state as a more or less convenient forum generally rise to the level of a constitutional objection.[5]

In the instant case, Meyer employs Korn as a distributor for his manufactured blades. Shipments of Meyer blades are also made periodically to Uddeholm Corporation (a Delaware corporation with warehouses in Cleveland), which in turn advertises and solicits sales for generic doctor blades. The district court found these contacts sufficient to yield nationwide personal jurisdiction where the claim asserted arises under federal law.

Yet, even if the relevant area in delineating contacts were the United States as a

---

**3.** The constitutional validity of national contacts as a jurisdictional base is confirmed by those statutes which provide for nationwide service of process or service wherever defendant is "doing business" or "may be found." *See, e.g.,* 28 U.S.C. §§ 1335, 1397, 2361 (1982) (interpleader actions); 28 U.S.C. § 1655 (1982) (actions seeking to assert rights in real or personal property); 28 U.S.C. § 1695 (1982) (shareholders' suit against corporation).

**4.** Several commentators have noted that the interstate federalism concerns which animate fourteenth amendment due process analysis under *International Shoe* and its progeny are diminished in the fifth amendment context. *See* Green, *Federal Jurisdiction in Personam of Corporations and Due Process,* 14 Vand.L.Rev. 967 (1961); von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L. Rev. 1121, 1125 n. 6 (1966); Note, *Alien Corporations and Aggregate Contacts: A Genuinely Federal Jurisdictional Standard,* 95 Harv.L.Rev. 470, 484 (1981); Note, *Jurisdiction of Federal District Courts Over Foreign Corporations,* 69 Harv.L.Rev. 508, 516–17 (1956).

**5.** Courts have frequently noted that considerations of convenience may differ depending upon whether the defendant is an alien corporation

or a domestic corporation whose principal activities are conducted outside the forum state. Thus, one court has stated that "corporations who are headquartered in foreign lands are no more inconvenienced by a trip to one state than another." Centronics Data Computer Corp. v. Mannesmann, A.G., 432 F.Supp. 659, 663 (D.N. H.1977); *accord* DeJames v. Magnificence Carriers, Inc., 491 F.Supp. 1276, 1281 (D.N.J.1980), *aff'd* 654 F.2d 280 (3d Cir.1981); Wells Fargo & Co. v. Wells Fargo Express Co. 556 F.2d 406, 416 (9th Cir.1977); Ag-Tronic Inc. v. Frank Paviour Ltd., 70 F.R.D. 393, 401 (D.Neb.1976) (supplemental opinion); Cryomedics, Inc. v. Spembly, Ltd., 397 F.Supp. 287, 292 (D.Conn.1975); Engineered Sports Products, v. Brunswick Corp., 362 F.Supp. 722, 728–29 (D.Utah 1973).

Those few courts which have adopted the national contacts theory have relied upon federal transfer provisions to reduce any inconvenience that results from an alien defendant's broadened susceptibility to suit. *See, e.g.,* Holt v. Klosters Rederi A/S, 355 F.Supp. 354 (W.D. Mich.1973); *cf.* Cryomedics, Inc. v. Spembly, Ltd., 397 F.Supp. 287, 290 (D.Conn.1975) ("If the defendant's contacts with the United States are sufficient to satisfy the fairness standards of the Fifth Amendment … then the only limitation on place of trial would be the doctrine of *forum non conveniens*.")

whole, we would nonetheless be required to ask whether the quality and quantity of Meyer's contacts were constitutionally adequate to support personal jurisdiction. For although the present fifth amendment due process inquiry need not address concerns of interstate federalism, it must still consider the remaining elements of the minimum contacts doctrine as developed by *International Shoe* and its progeny.

The line of cases from *International Shoe* to *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) mandates that, in assessing the sufficiency of Meyer's contacts, this court examine both the extent to which Meyer availed himself of the privileges of American law and the extent to which he could reasonably anticipate being involved in litigation in the United States. *See Kulko v. California Superior Court*, 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Although the assertion of jurisdiction might well be justified on the ground that only then could the substantive policies of the patent laws be given effect, we believe an inquiry into affiliating circumstances, even if national in scope, is nonetheless necessary. Otherwise, a plaintiff's unilateral activity might suffice to establish personal jurisdiction over an alien defendant.

The presence of Meyer's blades in the United States is neither fortuitous nor the result of a single transaction. Rather, Meyer, by means of Korn and possibly Uddeholm, has attempted to serve indirectly the domestic market for his product.[6]

Although we do not decide the issue, we can appreciate the argument that a federal statute, prescribing nationwide *personal* jurisdiction on the basis of a defendant's aggregated national contacts, might itself be constitutional. We are, however, unaware of any federal statute which presently authorizes district courts to found personal jurisdiction upon such aggregated contacts.

### B.

In the absence of a federal statute authorizing nationwide service of process, federal courts are referred to the statutes or rules of the states in which they sit. Rule 4(e) of the Federal Rules of Civil Procedure provides in pertinent part:

> Whenever a statute or rule of court of the state in which the district court is held provides (1) for the service of a summons, or a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.

When a federal question case arises under a federal statute that is silent as to service of process, Rule 4(e) adopts an incorporative approach requiring that both the assertion of jurisdiction and the service of process be gauged by state amenability standards.[7] Rule 4(e), incorporating state juris-

---

**6.** We note in a fifth amendment context, no less than in a fourteenth amendment context, the dispositive analysis of whether commerce alone serves to ground personal jurisdiction must be conducted under the "foreseeability" test enunciated in *World-Wide Volkswagen*, 444 U.S. at 296–97, 100 S.Ct. at 566–67. Clearly, if due process analysis were concerned merely with territoriality, the presence of Meyer's product would be enough to yield jurisdiction based on national contacts.

The *Volkswagen* Court, however, made it apparent that fairness requires something more; individuals should be given fair notice about which activities would make them amenable to suit in a state forum. The Court was concerned that if foreseeability alone were the criterion,

sellers of goods would confront widened bases of personal jurisdiction. *See* 444 U.S. at 296, 100 S.Ct. at 566 ("Every seller of chattels would in effect appoint the chattel his agent for service of process.") By extrapolation, in the present context, that foreseeability which is of constitutional significance is not the mere likelihood that a product will enter the United States, but rather that Meyer, by shipping his product to various areas of this nation, should reasonably anticipate being haled into court in Pennsylvania, despite the insufficiency of his contacts with that particular forum.

**7.** The "under the circumstances" language of Rule 4(e) has been interpreted to require the use of state jurisdictional provisions. *See* DeMelo v.

dictional provisions, thus invites the problems posed by this appeal.

We have recognized in the past that use of a state standard may produce anomalous results when applied to the litigation of a federal claim. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir.1981). In enacting a jurisdictional statute, a state legislature is generally limited by the due process constraints of the fourteenth amendment. Rule 4(e), by remitting federal courts to state statutes, imposes similar fourteenth amendment due process restrictions on the jurisdictional reach of federal courts hearing nondiversity cases.[8] This, in turn, leads to the prospect of a federal court refusing to adjudicate a fed-

eral claim because the courts of the state in which it sits could not accept jurisdiction.

Although the uniform administration of federal law might be enhanced were Congress to establish a general federal question competence statute, in the absence of such legislation, we are required to follow the incorporative provisions of Rule 4(e). As we stated in *DeJames*, while use of state amenability standards creates anomalies, "it would be equally anomalous to utilize a state long-arm rule to authorize service of process in a manner that the state body enacting the rule could not constitutionally authorize." 654 F.2d at 284.

This court is not the first to confront the national contacts theory. Although other

---

Toche Marine, Inc., 711 F.2d 1260, 1266 (5th Cir. 1977); Wells Fargo & Company v. Wells Fargo Express Company, 556 F.2d 406, 418 (9th Cir. 1977); AG-Tronic, Inc. v. Frank Paviour, Ltd., 70 F.R.D. 393, 400 (D.Neb.1976); Edward J. Moriarty & Co. v. General Tire & Rubber Co., 289 F.Supp. 381, 390 (S.D.Ohio 1967). Professors Wright and Miller propose a similar interpretation:

When service is made under rule 4(e) on a person not an inhabitant of or found within the state, it is unclear whether state or federal law governs amenability. It has been held that the phrase "under the circumstances," which was inserted in Rule 4(e) in 1963 regarding service under state statutes, concerns amenability to suit as well as the other circumstances relating to process and thus provides some specific evidence that the state test should control when service is made under Rule 4(e). This view seems particularly appropriate when a *state statute relating to* quasi-in-rem jurisdiction is used since the Advisory Committee Notes to the 1963 amendment seem to indicate a clear intent to conform to state practice in that context. It also should be pointed out that the word "circumstances" does not refer to the nature of the claim but rather to the nature of the acts giving rise to the claim. Thus, service in the manner provided by state law may be made under Rule 4(e) even in cases exclusively within the federal question, rather than the diversity, jurisdiction of the federal courts.

On balance, then, it would seem that state law always should govern amenability when a state statute is used pursuant to Rule 4(e). Although the opposite result has some appeal in that it permits effectuation of federal interest in a broader range of suits, it is inconsistent with the apparent intent of the draftsmen of Rule 4(e) to use state provisions for service in order to permit the federal courts in a state

to hear those cases that could be brought in the state's own courts when a basis for asserting federal subject matter jurisdiction exists. 4 C. Wright & A. Miller, Federal Practice & Procedure § 1075 at 312–13 (1969 & Supp.1983).

**8.** We note that the Pennsylvania long-arm statute provides that jurisdiction over nonresidents shall exist "to the fullest extent allowed under the Constitution of the United States and may be based on the most *minimum contact with this Commonwealth* allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322(b) (emphasis added). We need not therefore decide whether in the case of an alien defendant, Pennsylvania could assert jurisdiction to the full extent allowable under a fifth amendment due process analysis.

Although it is arguable that those liberty interests which the fourteenth amendment protects against encroachment through an overbroad assertion of personal jurisdiction, *see* Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702–03 n. 10, 102 S.Ct. 2099, 2104–05 n. 10, 72 L.Ed.2d 492 (1982), may differ in the case of an alien defendant, the Pennsylvania statute by its terms contemplates that personal jurisdiction shall be based solely upon *contacts with the state*. The Pennsylvania legislature thus obviously confined itself to the due process restrictions of the fourteenth amendment. Under Rule 4(e) and *DeJames*, we are similarly confined. Nor do we believe that we are free to disregard those aspects of state law, which do not seem to accord with pursuit of a federal claim, without usurping the prerogative of Congress. *But see* von Mehren & Trautman, *supra*, at 1125 n. 6 ("Perhaps it would be useful when state provisions are used, as it were by default, in the enforcement of federal claims, to recognize that some aspects of the state law can be disregarded.")

courts have generally acknowledged the logic of inquiry into a defendant's contacts with the United States when an action is based upon a federally created right, they reason they must have a federal rule or statute authorizing nationwide or worldwide service of process before the national contacts theory can be applied. *See, e.g., Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 418 (9th Cir.1977) (refused to aggregate national contacts since Lanham Act did not grant the court broad service of process powers); *Superior Coal Co. v. Ruhrkohle, A.G.,* 83 F.R.D. 414, 418–20 (E.D.Pa.1979) (rejected national contacts theory in action instituted under the Clayton and Anti-Dumping Acts); *Amburn v. Harold Foster Industries, Ltd.,* 423 F.Supp. 1302 (E.D.Mich.1976) (court limited to considering contacts with state in patent infringement action in absence of authority for nationwide service of process); *Graham Engineering Corp. v. Kemp Products Ltd.,* 418 F.Supp. 915, 919–20 (N.D. Ohio 1976) (same); *Ag-Tronic, Inc. v. Frank Paviour Ltd.,* 70 F.R.D. 393, 401 (D.Neb.1976) (same); *Edward J. Moriarty & Co. v. General Tire & Rubber Co.,* 289 F.Supp. 381, 389–90 (S.D.Ohio 1967) (must meet qualifications for state long-arm statutes in action brought under the Sherman Act).

Even those few courts which have accepted the national contacts theory have ultimately grounded jurisdiction upon satisfaction of a state long-arm statute. *See Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975) (in patent infringement action against German defendant, jurisdiction found under Illinois long-arm statute); *Centronics Data Computer Corp. v. Mannesmann, A.G.,* 432 F.Supp. 659, 664 (D.N.H.1977) (jurisdiction over German defendant in action alleging conspiracy to violate the antitrust laws based partly on New Hampshire long-arm statute); *Engineered Sports Products v. Brunswick Corp.,* 362 F.Supp. 722, 728 (D.Utah, 1973) (in patent infringement

claim against European defendants, court finds jurisdiction under Utah long-arm statute); *cf. Holt v. Klosters Rederi A/S,* 355 F.Supp. 354 (W.D.Mich.1973) (in action under Death on High Seas Act, jurisdiction found on basis of aggregate contacts, although case transferred to Florida where foreign defendant had multiple contacts); *but see Cryomedics, Inc. v. Spembly, Ltd.,* 397 F.Supp. 287, 288, 290–92 (D.Conn.1975) (patent infringement action in which district court held that all of British defendant's American activities could be aggregated to establish in personam jurisdiction in Connecticut because, in part, state long-arm statute had been interpreted by state courts to extend to the limits of due process).

■ Because, in the absence of a governing federal statute, we have found no authority for exercising personal jurisdiction over Meyer on the basis of his contacts with states other than Pennsylvania, we reject the national contacts theory on which the district court predicated its jurisdiction. We conclude that in the absence of some provision within the patent laws authorizing nationwide service of process, the district court's power to exercise in personam jurisdiction is limited by Fed.R.Civ.P. 4(e) and by the Pennsylvania long-arm statute, whose incorporation by reference, Rule 4(e) requires.

## III.

It remains to be decided whether personal jurisdiction over Meyer may be obtained under the Pennsylvania long-arm statute, 42 Pa.Cons.Stat.Ann. § 5321 et seq. (Purdon 1981). Daetwyler argues that personal jurisdiction exists under the "transacting business" provision of the Pennsylvania statute because Meyer, through Uddeholm, indirectly ships doctor blades into the state.[9] On the record before it, the district court concluded it would be hard pressed to

9. 42 Pa.Cons.Stat.Ann. § 5322(a)(1)(iii) provides that personal jurisdiction over a nonresident may be obtained on the basis of transacting business, defined as "the shipping of merchandise directly or indirectly into or though [Pennsylvania]." See note 1, *supra*, for full text.

find contacts sufficient to sustain jurisdiction.[10] 560 F.Supp. at 870. We agree.

Meyer's independent American distributor, Henry P. Korn Associates, Inc., has sold no Meyer products in Pennsylvania. *See* Deposition of Henry P. Korn, App. at 69b. Nor does Meyer himself have any direct contacts with the state. Daetwyler, however, contends that Uddeholm also acts as a distributor for Meyer products and that Uddeholm has both advertized and sold Meyer blades within the state. Although Uddeholm's status as a distributor remains in dispute, record evidence demonstrates that during 1981 and 1982, Uddeholm shipped Meyer blades to three customers in Pennsylvania. *See* Deposition of Thomas W. Knudsen, App. at 88b. These shipments were made from Uddeholm's warehouse in Cleveland, and the blades were sold as generic Uddeholm products. Uddeholm also placed advertisements for Uddeholm doctor blades, among which Meyer products, although unnamed, might be included, in several trade publications. *See* Deposition of Thomas W. Knudsen, App. at 101b.

It is axiomatic that the issue of minimum contacts turns on the specific facts of each case, and that the existence or absence of personal jurisdiction depends upon an assessment of the quality and nature of a defendant's activity. *See Hanson v. Denckla, supra.* To find that jurisdiction over Meyer exists, we must be satisfied that not only do the facts of this case satisfy the literal terms of the Pennsylvania statute, but also that sufficient affiliating circumstances, Meyer's contacts with the forum, exist to meet the demands of due process. We are not persuaded that the occasional sales of Meyer products by Uddeholm satisfy the "indirect shipment" language of the Pennsylvania statute. Even if we were, however, it is doubtful whether such sales may be deemed acts of purposeful affiliation by Meyer adequate to satisfy due process.

To support jurisdiction Daetwyler, in essence, argues for an expansive application of the "stream of commerce" theory. Under this theory, as construed by Daetwyler, jurisdiction exists because Meyer, through Uddeholm, participated in a distributive chain which might reasonably anticipate sales of Meyer products in major industrial markets, which should include Pennsylvania. Although this argument might have some force were national contacts a cognizable jurisdictional base, a theory which we have rejected, it is unpersuasive when applied to Meyer's requisite contacts with Pennsylvania. This is particularly so in light of *World-Wide Volkswagen's* pronouncement that the mere likelihood that a product will enter the forum state cannot afford a constitutionally adequate contact.[11] 444 U.S. at 297, 100 S.Ct. at 567.

We note that the stream of commerce theory evolved to sustain jurisdiction in products liability cases in which the product had traveled through an extensive chain of distribution before reaching the ultimate consumer. *See DeJames v. Mag-*

---

**10.** Not only did the district court acknowledge that it would be hard pressed to find contacts with Pennsylvania sufficient to support jurisdiction, but the district court, in certifying the present appeal, also stated that an immediate appeal could materially advance the termination of the litigation because this court, if it disagreed with the district court's "national contacts" analysis (as we have), "would presumably direct dismissal of the suit." 575 F.Supp. at 282. A reading of both statements compels the conclusion that the district court found jurisdiction lacking under the Pennsylvania statute. In ruling upon the question of jurisdiction under the Pennsylvania statute, we have done no more than apply the law to the facts of record as developed in the district court.

**11.** In *World-Wide Volkswagen, supra,* neither the manufacturer nor the national importer was before the Court. Rather, the *Volkswagen* Court was concerned with restricting the foreseeability criterion to protect local retailers from suits in distant fora. The decision may thus be read to suggest that a defendant manufacturer need not have transacted business in the forum state if it has attempted to cultivate a market for its goods within the state. The requirement that a foreign manufacturer attempt to develop a market, however, must subsume those purposeful affiliation requirements, beyond mere foreseeability, which allow a manufacturer to anticipate being sued within the forum state.

*nificence Carriers, Inc., supra* at 285. In such cases, it was felt the presence of a distributor should not shield a manufacturer, whose products had caused harm to residents of the forum state, from the reach of the forum state's long-arm rule. It is debatable whether similar public policies are at stake in the present case.[12] Yet even if we assume that Daetwyler's interest in enforcing substantive patent laws is at least equivalent to that of an injured user of manufactured goods in securing compensation, we have difficulty in finding that Uddeholm's sporadic transactions in Pennsylvania suffice to allow Meyer to anticipate being sued in Pennsylvania.

A review of the "stream of commerce" cases indicates that the manufacturers involved had made deliberate decisions to market their products in the forum state. *See Novinger v. E.I. DuPont de Nemours & Co., Inc.*, 89 F.R.D. 588 (M.D.Pa.1981) (exercise of personal jurisdiction over third-party defendant, German manufacturer of automobile repair products, did not offend due process where significant number of products sold to one dealership in Pennsylvania); *Hicks v. Kawasaki Heavy Industries*, 452 F.Supp. 130 (M.D.Pa.1978) (jurisdiction existed over manufacturer of motorcycles sold in Japan to American distributor and resold at retail by 55 dealerships in Pennsylvania); *Keene v. Multicore Solders Ltd.*, 379 F.Supp. 1279 (E.D.Pa.1974) (jurisdiction found over British corporation which had made series of indirect shipments of its product into Pennsylvania); *Gorso v. Bell Equipment Corp.*, 376 F.Supp. 1027 (W.D.Pa.1974) (jurisdiction sustained where French crane manufacturer sold crane indirectly through distributor and thereafter delivered spare parts in forum state); *Saccamani v. Robert Reiser and Co., Inc.*, 348 F.Supp. 514 (W.D.Pa. 1972) (German manufacturer, who sold numerous meat choppers in Pennsylvania by means of a distributor, held subject to jurisdiction); *cf. Benn v. Linden Crane Co.*, 326 F.Supp. 995 (E.D.Pa.1971) (jurisdiction found over Swedish crane manufacturer whose product sold through distribu-

---

**12.** The "stream of commerce" theory, as applied to sellers of goods in interstate or international commerce, largely adopts a jurisdictional scheme suggested by Professors von Mehren and Trautman. *See* von Mehren & Trautman, *supra*, note 4 at 1167–69. When a defendant engages in conduct that is essentially multistate in character, while the plaintiff's conduct remains essentially local, the jurisdictional preference traditionally accorded defendants is reversed. Actors, whose economic activities and legal relationships are predominantly multistate, thus confront broadened bases of personal jurisdiction, subject always to the threshold requirement of purposeful affiliation with the forum state.

Where, as here, plaintiff is also a multistate actor and where, unlike a products liability case, there is no showing of particularly localized harm, it is questionable whether the same tolerance for broad jurisdiction is reasonable. Presumably, Daetwyler would suffer no undue inconvenience if required to seek a forum in which Meyer is traditionally amenable to suit without resort to aggregated national contacts.

The dissent suggests that characterizing patent infringement as a tort may provide a basis for asserting personal jurisdiction over Meyer. 42 Pa.Cons.Stat.Ann. § 5322(a)(4) provides that "[c]ausing harm or tortious injury by an act or omission" in the state may act as a basis for personal jurisdiction. Yet, even the fact that patent infringement may be deemed a tort cannot relieve a plaintiff from establishing that a defendant has sufficient minimum contacts with the forum state. Nor can the designation of patent infringement as a tort automatically satisfy the foreseeability requirement of *World-Wide Volkswagen.*

The dissent relies upon Horne v. Adolph Coors Co., 684 F.2d 255 (3d Cir.1982), Honeywell, Inc. v. Metz Apparatewerke, *supra,* and Engineered Sports Products v. Brunswick Corp., *supra,* for the proposition that tortious injury may occur wherever the infringing products are sold. Apart from the fact that such a far-ranging theory, if carried to its logical extreme, might well result in the very "national contacts" theory which we have unanimously rejected, these cases are clearly distinguishable from the case sub judice.

In each cited case, not only were numerous sales made within the respective forum states, but also in personam jurisdiction was exercised to protect the intangible property interests of residents of the forum state. Here, as previously noted, there is no showing that Daetwyler's possible harm is uniquely located within Pennsylvania. Nor can Pennsylvania be said to have an interest in protecting a resident individual or corporation equivalent to the forum interests recognized in *Horne, Honeywell,* or *Engineered Sports.*

tive chain).[13] The present case is thus distinguishable from those cases in which the foreign manufacturer of a defective product had either indirectly derived substantial benefit from the forum state or had a reasonable expectation of doing so. We cannot therefore conclude that Meyer's contacts with Pennsylvania are adequate to satisfy the demands of due process.

Our attention has been called to *Kenny v. Alexson Equipment Co.*, 495 Pa. 107, 432 A.2d 974 (1981). In *Kenny*, the Supreme Court of Pennsylvania suggested that the "purposeful participation by the seller [of a product] in a continuous distributive chain" might meet the minimum contacts requirement. Such participation, however, cannot itself yield jurisdiction in the absence of some indicia of purposeful affiliation with the forum state. In the present case, Meyer's contacts with Pennsylvania are insufficient to enable us to conclude that Meyer either attempted to obtain any benefit from the state or could reasonably expect to be haled into court there. To hold that Uddeholm's intermittent sales of Meyer blades evidences continuous distributive activity, capable and certain of repetition, is to allow the mere possibility of future contact to support jurisdiction. We do not believe such hypothetical contacts can ground jurisdiction. Nor can Uddeholm's occasional advertisements of its generic products be deemed such a sustained promotional campaign, directed to residents of Pennsylvania, that jurisdiction over Meyer may be obtained thereby. *See Jacobs v. Lakewood Aircraft Service Inc.*, 493 F.Supp. 46 (E.D.Pa.1980); *Hart v. McCollum*, 249 Pa.Super. 267, 376 A.2d 644 (1977).

 On the record before us, we find Meyer lacks sufficient minimum contacts with Pennsylvania to sustain the exercise of personal jurisdiction. That part of the district court opinion, holding jurisdiction cannot be found under the Pennsylvania statute, will therefore be affirmed.

### IV.

In summary, we hold that in the absence of a governing federal statute providing for nationwide service of process, in personam jurisdiction may not rest upon an alien defendant's aggregated contacts with the United States. Meyer also lacks the requisite minimum contacts with Pennsylvania to support jurisdiction.

Accordingly, we will affirm so much of the district court's order dated April 13, 1983 as holds Meyer is not amenable to suit under the Pennsylvania long arm statute. We will reverse so much of that order as retains jurisdiction over Meyer based on national contacts and we will direct that the district court enter an order dismissing Daetwyler's action.

SLOVITER, Circuit Judge, dissenting.

### I.

I concur in the majority's conclusion reached in Part II that the district court erred in asserting jurisdiction on the basis of Meyer's contacts with the United States as a whole. I am unable to join Part II of the majority's opinion, however, because, in my view, it fails to properly state and apply settled principles of personal jurisdiction. I dissent from Part III of the opinion because it reflects too narrow a view of the scope of personal jurisdiction. Instead of

13. Daetwyler relies heavily upon Benn v. Linden Crane Co., *supra*, to support the exercise of jurisdiction in the present case. *Benn*, a diversity action, was an early case construing the "indirect shipment" language of a prior version of the Pennsylvania statute. In *Benn*, a Swedish manufacturer sold a crane F.O.B. Sweden to a Connecticut purchaser who acted as the exclusive American distributor of the manufacturer's products. The Swedish manufacturer had no direct contacts with Pennsylvania, but evidence obtained during discovery revealed the manufacturer had some knowledge its products would eventually be used in Pennsylvania. On the basis of this record, the court held the foreign manufacturer subject to jurisdiction in a products liability action. *Benn*, of course, was decided before *World-Wide Volkswagen*. It is arguable whether *Volkswagen's* heightened foreseeability criterion was met in *Benn*. In the present case, however, evidence indicating Meyer could anticipate either use of its product or litigation in Pennsylvania, is totally lacking.

directing dismissal of this action, I would remand to the district court for further findings on Meyer's contacts with Pennsylvania.

## II.

While the majority gives lip service to the steadfast principle of judicial procedure that we reach the constitutional issues only after exhausting the statutory alternatives, *Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), it fails to apply that principle. Plaintiff sought to predicate jurisdiction on either of two bases, first, the "national contacts" doctrine accepted by the district court, which is essentially a federal basis for jurisdiction, and second, the application of Pennsylvania law. In its discussion of the national contacts theory, I see no reason for the majority's failure to follow the proper order of analysis and consider the statutory issue before reaching the constitutional issue. The majority's explanation that it is free to reverse the inquiry because the Pennsylvania statute incorporates the federal due process standard, see Majority typescript opinion at 8, is unconvincing because Pennsylvania law is irrelevant to the national contacts theory. Thus I cannot join Part II of the majority opinion because it fails to address *first* whether there is statutory authority for service of process and personal jurisdiction, *see, e.g., Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 489 (3d Cir.1985), and instead engages in an unnecessary discussion of due process.

I agree, however, with the majority's conclusion that we cannot sustain jurisdiction over Meyer on the theory of national contacts adopted by the district court. The district court failed to consider whether there was any federal statutory authority for nationwide service of process. Since there is no such authority in a suit for patent infringement, we need not decide whether it would be constitutional to assert personal jurisdiction over an alien defendant solely on the basis of the alien's national contacts. *See Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 416–18 (9th Cir.1977).

In *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 286 n. 3 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981), we accepted for purposes of argument that *"if* service can be made by wholly federal means," aggregate contacts with the United States might be considered. There we found that the suggested "wholly federal means" of service, a treaty, could not support the service of process. Here, no "wholly federal means" is even suggested. Since the absence of such authorization is dispositive of the application of any national contacts theory in this case, I see no reason why the majority proceeds with its discussion of the constitutional basis for such a theory.

Furthermore, I find certain statements obscure and various parts of the discussion confusing. For example, though the majority disclaims deciding whether there are enough contacts here to satisfy due process under the Fifth Amendment, it nonetheless hints that there are. However, a recent scholarly work suggests that there may indeed be constitutional limits imposed by the Due Process Clause of the Fifth Amendment to unrestricted nationwide personal jurisdiction. *See* Fullerton, *Constitutional Limits on Nationwide Personal Jurisdiction in the Federal Courts,* 79 Nw.U.L.Rev. 1 (1984). I believe that we would do better from a jurisprudential standpoint to decide the case before us, relying on the absence of a federal statute authorizing service of process in this situation.

## III.

Because there is no statute of the United States prescribing the manner of service, we are remitted under Fed.R.Civ.P. 4(e) to state law, here Pennsylvania's long-arm statute, to determine Meyer's amenability to suit.

Initially, I note that this issue goes beyond that which the district court certified under 28 U.S.C. § 1292(b). In its statement made with respect to certification, the

district court stated that the controlling question of law certified "is whether, because defendant is being sued in the Eastern District of Pennsylvania on a claim arising under federal law, *in personam* jurisdiction in this district is constitutionally supportable on the basis of the defendant's aggregate contacts with the United States taken as a whole?" *Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 284 (E.D. Pa.1983). We are, however, not limited by the precise question certified by the district court. In interpreting the scope of our jurisdiction under 28 U.S.C. § 1292(b), we have held that "once leave to appeal is granted the court of appeals is not restricted to a decision of the question of law which in the district judge's view was controlling." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir.) (in banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). *See also Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 336 n. 10 (3d Cir.1984); *Johnson v. Alldredge*, 488 F.2d 820, 822–23 (3rd Cir.1973), *cert. denied*, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974).

Thus I turn, as did the majority, to the remaining issue of whether jurisdiction can be asserted over Meyer under the Pennsylvania long arm statute. Significantly, under that statute jurisdiction "may be based on the most minimum contact *with this Commonwealth* allowed under the Constitution of the United States." 42 Pa.Cons. Stat.Ann. § 5322(b) (1981) (emphasis added). The Pennsylvania statute does not purport to authorize jurisdiction based on a defendant's aggregate contacts with the United States. Moreover, even if it did, *DeJames* commits us to viewing the Pennsylvania statute as limited by the Fourteenth Amendment, precluding the exercise of jurisdiction in the absence of the requisite contacts with the forum state, 654 F.2d at 284.

The majority holds that the provision of the Pennsylvania long-arm statute authorizing jurisdiction over nonresidents who ship merchandise, albeit indirectly, into Pennsylvania, 42 Pa.Cons.Stat.Ann. § 5322(a)(1)(iii), is inapplicable here. I believe the majority errs in reading the district court's opinion as holding that Meyer's contacts are insufficient under this provision. Rather, the district court noted certain factual disputes and stated that it would be "hard pressed" to find the contacts sufficient, *Max Daetwyler Corp. v. Meyer*, 560 F.Supp. 869, 870 (E.D.Pa.1983), but it never so held definitively. Instead it turned to the national contacts theory, and because it found Meyer's aggregate contacts with the United States were sufficient to justify the exercise of jurisdiction it never returned to Pennsylvania law. Unless it is clear as a matter of law that Meyer's contacts are insufficient, the district court should decide the issue in the first instance.

Pennsylvania's long-arm statute extends the state's jurisdiction to its constitutional limit. *Koenig v. International Bhd. of Boilermakers*, 284 Pa.Super. 558, 567, 426 A.2d 635, 639 (1980). In such a situation, we may proceed directly with the due process inquiry. *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1058 (3d Cir.1982). I believe the majority erroneously concludes on the basis of the record before us that Meyer's contacts are constitutionally insufficient. In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), the Supreme Court reaffirmed the already well-established principle that a state may assert personal jurisdiction over a defendant "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." The majority opinion distinguishes the present case from a series of "stream of commerce" cases primarily on the grounds that Meyer made no "deliberate decision[ ] to market" his doctor blades in Pennsylvania. Typescript Opinion at 23–24. It also suggests that Meyer had no knowledge or anticipation that his products would be used in Pennsylvania.

Since the district court did not pursue its factual inquiry, I am uncertain on what basis an appellate panel can decide whether or not Meyer had the requisite "expectation" that the product he purposefully marketed in the United States would be pur-

chased by consumers in Pennsylvania. In neither of Meyer's affidavits filed in support of his motion to dismiss for lack of personal jurisdiction and improper venue did he disclaim any expectation that the doctor blades he sells in the United States through his American distributor would be purchased by consumers in Pennsylvania. As we recognized in *DeJames*, 654 F.2d at 285, the benefit derived by *manufacturers* who place their products into the stream of commerce is far different from the mere derivative benefit received by distributors and analogous defendants, which was held insufficient in *World-Wide Volkswagen* and *DeJames* to support jurisdiction. Here, Meyer is the manufacturer, and his expectation as to distribution, and the reasonableness thereof, are ultimately matters for factual findings that have not been made on this record. I think it is improper for this court to engage in making factual inferences from an incomplete record and thereby foreclose plaintiff from showing that there is jurisdiction under a theory acknowledged as appropriate by the Supreme Court.

Finally, I find it surprising that the district court did not consider whether jurisdiction could be asserted on the basis that Meyer had allegedly caused tortious injury in the state. Since the underlying suit is one for the tort of patent infringement, and the tortious injury may occur wherever the infringing products are sold, *see Horne v. Adolph Coors Co.*, 684 F.2d 255, 260 (3d Cir.1982); *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir.1975), there may be some plausibility to this theory of jurisdiction pressed by plaintiff. In a similar patent infringement case against an alien, jurisdiction was sustained under the provision of Utah law authorizing out-of-state service upon parties who cause "any injury within this state whether tortious or by breach of warranty." *See Engineered Sports Products v. Brunswick Corp.*, 362 F.Supp. 722, 725–26 (D.Utah 1973). The Pennsylvania statute is similar, providing for jurisdiction over someone "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth," 42 Pa.Cons.Stat.Ann.

§ 5322(a)(4). Interestingly, the Utah court used the national contacts in addition to the state contacts as the basis for finding that application of the state long-arm statute did not offend due process. *Id.* at 728–29. *See also Centronics Data Computer Corp. v. Mannesmann, A.G.*, 432 F.Supp. 659, 663–68 (D.N.H.1977). While there may indeed be factual differences between this case and the cases that accepted this theory, as the majority states, I think that the district court should decide in the first instance whether these differences change the result.

Since either the "transacting business" rationale or the "tortious injury" rationale may offer sufficient basis for finding jurisdiction, we should not pretermit the district court's full consideration. Therefore, I would remand with instructions that the district court make a definitive ruling on whether defendant is subject to jurisdiction based on the Pennsylvania long-arm statute.