Ronald W. NIKLAUS, D.D.S., Mary Niklaus, Plaintiffs,

v.

VIVADENT, INC., U.S.A., Patterson Dental Supply Co., and Vivadent Leichtenstein, Defendants,

v.

W. SEDLBAUER GMBH and FA. Litema.

No. CV–87–1760.

United States District Court, M.D. Pennsylvania.

Sept. 7, 1990.

Allen E. Ertel, Williamsport, Pa., for plaintiffs.

Jonathan E. Butterfield, Williamsport, Pa., for Patterson Dental Supply Co.

John E. Person, III, Williamsport, Pa., for Vivadent, Inc., U.S.A. and Vivadent Leichtenstein.

## MEMORANDUM

McCLURE, District Judge.

### I. PROCEDURAL HISTORY

This is a diversity action commenced by Plaintiffs on December 18, 1987. Defendants Vivadent, Inc., U.S.A. ("Vivadent USA") and Vivadent ETS [1] (referred to collectively as "Vivadent") filed a third-party complaint against Sedlbauer AG [2] ("Se-

---

1. Incorrectly sued as Vivadent Leichtenstein.

2. Incorrectly sued as W. Sedlbauer GMBH.

dlbauer") and Litema, G. Schernath KG[3] ("Litema") on March 28, 1989. On August 11, 1989 Sedlbauer and Litema filed a motion to dismiss the third-party complaint for lack of personal jurisdiction.

This case involves allegations that a dental resin curing light known as the "Heliomat" used in the dental practice of Plaintiff, Dr. Ronald W. Niklaus, caused eye damage to Dr. Niklaus. Plaintiffs' complaint alleges that Dr. Niklaus purchased the Heliomat from Patterson Dental Supply Company. It further alleges that Patterson, a company with its principal place of business in Minnesota, purchased the light from Vivadent USA, a New York corporation, which in turn purchased it from Vivadent ETS, a Leichtenstein company.[4] Plaintiffs assert claims in strict liability, breach of warranty, negligence and loss of consortium.

During discovery Vivadent determined that the Heliomat was designed, manufactured and distributed by Sedlbauer and Litema. On March 7, 1989 Vivadent was granted leave to join Sedlbauer and Litema as third party defendants. Subsequently, Sedlbauer and Litema filed a motion to dismiss for lack of personal jurisdiction.

## II. STATEMENT OF FACTS

On the basis of information provided by the parties for the purpose of deciding the jurisdictional issue[5], the court finds the following facts.

Sedlbauer is a company organized under the laws of West Germany. Its main office is located in Grafenau, West Germany. Its only other office is in Munich, West Germany. Sedlbauer is in the business of manufacturing and selling electrical, electronic and mechanical goods. Sedlbauer manufactures resin curing lights, such as the one involved in this lawsuit, in two models:

a 118 volt model for use in the United States and Canada[6] and a 220 volt model for use in other countries.

Litema is in the business of the sale of dental equipment. Its only office is in Baden–Baden, West Germany. Neither Litema nor Sedlbauer has offices, employees, agents or property in the state of Pennsylvania. Neither company has ever made any direct sales in this state and no one from either company has ever been to Pennsylvania on a business trip.

In 1980, Vivadent ETS entered into an agreement with Litema and Sedlbauer, whereby Sedlbauer would manufacture and Litema would distribute a certain dental resin curing light for Vivadent ETS. At the time the agreement was negotiated, a resin curing light was already being manufactured by Sedlbauer and distributed by Litema under the name "Pluraflex".[7] The terms of the agreement provided that Sedlbauer would manufacture and Litema would distribute to Vivadent ETS a machine identical to the Pluraflex with the exception of some cosmetic changes, and that this machine would be called "Heliomat". Vivadent marketed the Heliomat as its own product: it had Vivadent's name, not Sedlbauer's or Litema's, on its front and rear plates, and it was accompanied by instructions prepared by Vivadent.

From the spring of 1980 until March 1982, Sedlbauer manufactured and Litema distributed a total of approximately 11,700 Heliomats to Vivadent ETS. Of these, 4,036 were manufactured with U.S. type voltage and plugs and were distributed by Vivadent ETS to Vivadent USA, which in turn sold the machines throughout the United States. One of these Heliomat resin curing lights was allegedly purchased by Plaintiff for use in his dental practice in Pennsylvania.

---

3. Incorrectly sued as FA. Litema.

4. The complaint alleges that Vivadent ETS designed and manufactured the Heliomat.

5. The third-party defendants, in support of their motion, submitted the affidavit of Gerhard Schernoth, general manager of Litema since its establishment in 1973, and the affidavit of Hans Steiner, chairman of Sedlbauer since 1986, and a managerial level employee of Sedlbauer since

1968. The third-party plaintiffs, in opposition to the motion, submitted the affidavit of Erich Fuchsreiter, Managing Director of Vivadent ETS, who has been employed by Vivadent ETA in the capacity of Manager since 1960.

6. This model may also be used in the Far East.

7. Sedlbauer manufactured more than 10,000 of these lights some of which were equipped with U.S. type voltage and plugs.

Both Litema and Sedlbauer were aware of the fact that Vivadent intended to sell some of the lights in the United States, but neither had any knowledge, involvement or control over Vivadent's marketing procedures in the United States.

## III. DISCUSSION

■ The central concern of a jurisdictional inquiry is the relationship among the defendant, the forum and the litigation. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293 (3d Cir.1985), citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Rule 4(e) of the Federal Rules of Civil Procedure permits a federal district court to exercise personal jurisdiction to the extent allowed by the long-arm statute of the state in which the court sits. Pennsylvania's long-arm statute expressly incorporates the federal due process standard. 42 Pa.Cons.Stat.Ann. § 5322(b).

■ The Due Process Clause forbids a court from exercising personal jurisdiction over a defendant under circumstances that offend "traditional notions of fair play and substantial justice". *Int'l Shoe Co. v. Washington,* 326 U.S. at 316, 66 S.Ct. 154, at 158, 90 L.Ed. 95, quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940). Therefore, it must be determined whether Sedlbauer and/or Litema have sufficient minimum contacts with Pennsylvania to the extent that maintenance of the suit will not offend "traditional notions of fair play and substantial justice".

The minimum contacts required must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws". *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

As stated by the United States Supreme Court in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980):

[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's connections with the forum state are such that he should reasonably anticipate being haled into court there. *Id.* at 297, 100 S.Ct. at 567.

■ Vivadent argues that Sedlbauer and Litema are within the court's jurisdiction under the "stream of commerce" theory which evolved from the above quoted language. See *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Max Daetwyler Corp. v. Meyer, supra; Rockwell Int'l Corp. v. Costruzioni Aeronautiche,* 553 F.Supp. 328 (E.D.Pa.1982). Under this theory, if Sedlbauer and Litema are within the court's jurisdiction it would be because, through Vivadent, they participated in a distributive chain which might reasonably anticipate sales in Pennsylvania. The application of this theory, however, is not clear-cut (as evidenced by the plurality opinion in *Asahi* ).

Vivadent cites *Rockwell,* a personal injury suit which arose from a helicopter crash. The owner of the helicopter sued its manufacturer, Augusta, and the maker of allegedly defective custom-made ball bearings, SNFA. SNFA was a French corporation with no place of business in the United States. Augusta would buy the ball bearings from Somecat, SNFA's exclusive distributor, then sell the finished helicopter to its United States subsidiary in Delaware. Rockwell was a Pennsylvania corporation which purchased a helicopter from Augusta's United States subsidiary. The court held that SNFA had sufficient contacts to justify the exercise of personal jurisdiction.

However, in *Rockwell* the court relied heavily on the fact that SNFA worked closely with Augusta engineers in the design and testing of the precision "ball bearings for the A–109 helicopter with the knowledge that the A–109 was to be marketed throughout the continental United States". *Rockwell,* supra, 553 F.Supp. at 332. In the present case Sedlbauer made only cosmetic changes to dental resin curing lights it already manufactured before selling them to Vivadent ETS through Lite-

ma.[8] Furthermore, the court in *Rockwell,* stated that "because the ball-bearings were designed specifically for the Augusta helicopter, SNFA had a 'stake in' ... sales of the Augusta A–109 (and replacement parts)". *Id.* at 333.[9] This made for an extremely close relationship between SNFA and Augusta. This type of relationship does not exist between Sedlbauer and Vivadent.

Moreover, *Max Daetwyler Corp. v. Meyer, supra,* decided three years after *Rockwell,* is controlling. In *Daetwyler,* the court held that there were insufficient contacts to sustain the exercise of personal jurisdiction over the defendant.

Defendant Meyer had no direct presence in Pennsylvania, and had manufactured the product at issue in West Germany. The product was sold in the United States by an independent distributor. The only shipments to Pennsylvania were made by another distributor, Uddeholm, who took title to them in West Germany and sold them as generic Uddeholm, not Meyer, products. Although Meyer occasionally made shipments directly to American customers, it made no such direct shipments to Pennsylvania.

Although *Daetwyler* was a patent infringement case, it is applicable to the current facts.

In [stream of commerce] cases, it was felt the presence of a distributor should not shield a manufacturer, whose products had caused harm to residents of the forum state, from the reach of the forum state's long-arm rule. It is debatable whether similar public policies are at stake in the present case. Yet even if we assume that Daetwyler's interest in enforcing substantive patent laws is at least equivalent to that of an injured user of manufactured goods in securing compensation, we have difficulty in finding that Uddeholm's sporadic transactions in Pennsylvania suffice to allow Meyer to anticipate being sued in Pennsylvania.

*Max Daetwyler Corp. v. Meyer, supra,* 762 F.2d at 299.

As stated earlier, the central concern of a jurisdictional inquiry is the relationship among the defendant, the forum and the litigation. That is, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Industry Co. v. Superior Court, supra,* 480 U.S. at 113, 107 S.Ct. at 1034, 94 L.Ed.2d at 105.

The burden on Sedlbauer and Litema will be severe if kept in this case. If jurisdiction is exercised over these third-party defendants, their representatives will no doubt be required to travel from West Germany to Pennsylvania from time to time. Furthermore, they will have to submit their dispute with a Leichtenstein company, Vivadent ETA, and its United States subsidiary, Vivadent USA, to a foreign nation's judicial system, even though that dispute will be concerned largely with the contractual relationship with Vivadent ETS, a matter governed, presumably, by the laws of either Leichtenstein or West Germany. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.,* at 114, 107 S.Ct. at 1034, 94 L.Ed.2d at 105.

The interests of Pennsylvania in protecting its consumers is satisfied through the presence of Vivadent in the suit.

The possibility of being haled into a California court as a result of an accident involving Asahi's components undoubtedly creates an additional deterrent to the manufacturer of unsafe components; however, similar pressures will be placed on Asahi by the purchasers of its components as long as those who use Asahi components in their final products, and sell those products in California, are sub-

---

8. SNFA's exclusive distributor, Somecat, was not involved in the *Rockwell* decision. Therefore *Rockwell* is of limited value in determining jurisdiction over Litema, Sedlbauer's exclusive distributor.

9. In other words, without the sales for the A–109, SNFA would not have been able to sell any of these particular ball bearings.

ject to the application of California tort law.

*Id.*, at 115, 107 S.Ct. at 1034, 94 L.Ed.2d at 106. If Vivadent is unsuccessful in defending this suit the resulting pressure it will exert on Sedlbauer and Litema will satisfy the interests of Pennsylvania.

The interest of the true plaintiffs, Ronald and Mary Niklaus, in obtaining relief is similarly satisfied through the presence of Vivadent in the suit. The plaintiffs have not asserted any claim whatsoever against Sedlbauer or Litema. The only claim against the third-party defendants is the indemnification claim asserted by Vivadent, which would be better settled in the courts of Leichtenstein or West Germany.

We therefore enter the following order.

### ORDER

For the reasons stated in the accompanying memorandum,

IT IS, THEREFORE, ORDERED THAT:

The motion of Third–Party Defendants Sedlbauer AG and Litema, G. Schernath KG filed August 11, 1989 to dismiss the third-party complaint for lack of personal jurisdiction is granted.