**WESLEY–JESSEN CORPORATION,**
Plaintiff,

v.

**PILKINGTON VISIONCARE, INC.**
and Pilkington Barnes–Hind
Ltd., Defendants.

**Civ. A. No. 93–268–RRM.**

United States District Court,
D. Delaware.

Oct. 25, 1993.

See also 844 F.Supp. 987.

---

Robert K. Payson and William J. Marsden,
Potter Anderson & Corroon, Wilmington,
DE, John O. Tramontine, Douglas J. Gilbert
and Donald K. Reedy, Fish & Neave, New
York City, for plaintiff.

Robert K. Whetzel and Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, M. Scott Donahey, Donald N. Schachter and James M. Smith, Holtzman, Wise & Shepard, Palo Alto, CA, for defendants.

## OPINION

McKELVIE, District Judge.

This is a patent infringement case. In a complaint filed on June 8, 1993, Wesley–Jessen Corporation alleges Pilkington Visioncare, Inc. and Pilkington Barnes–Hind, Ltd. are infringing three of its patents for colored contact lenses and methods for making those lenses. The case is currently scheduled for a two week jury trial beginning Monday, June 6, 1994.

Pilkington Barnes–Hind, Ltd. has moved to be dismissed for lack of personal jurisdiction, and Pilkington Visioncare, Inc. has moved to transfer the balance of the claims to the Northern District of California. This is the Court's decision on the motion to dismiss. Concurrently with this Opinion the Court is issuing an Opinion on the motion for a change of venue.

*FACTS*

The plaintiff, Wesley–Jessen Corporation, is a Delaware corporation. Its principal place of business is Chicago, Illinois. Wesley–Jessen is engaged in the manufacture and sale of contact lenses and is the assignee of U.S. patent Nos. 4,582,402, 4,704,017 and 4,720,188. These patents relate to the development of a contact lens that is "tinted" by applying a pattern of colored dots to the lens surface. Plaintiff markets its colored lenses in the United States as "Durasoft 2 Colors," "Durasoft 3 Colors," and "Complements."

Pilkington Visioncare, Inc. ("Visioncare") is a Delaware corporation that sells a complete line of eye care products, including glasses, contact lenses, cleaning solutions and other related supplies. Visioncare has developed and markets its own line of tinted contact lenses under the brand name "Natural Touch." Visioncare's corporate headquarters are in Menlo Park, California, and its primary research, development, marketing, sales and administrative operations are locat-

ed in Sunnyvale, California. Visioncare also owns a shipping facility in San Diego, California. Visioncare is an indirect wholly owned subsidiary of Pilkington PLC, an English corporation. It does not have any offices or facilities in Delaware, nor does it employ any Delaware residents, except the Corporation Trust Company, its agent for service of process.

Visioncare sells its products nationally, and has made numerous sales in Delaware. Visioncare reaches potential Delaware customers through national advertising, and through the efforts of a sales representative, Benjamin Mashioff. Visioncare states that it has not maintained any specific advertising or sales campaign in Delaware, and that it has not aimed any such campaign specifically at customers residing in Delaware. However, Mr. Mashioff's duties include making sales in Delaware, and he has often made sales presentations for Natural Touch lenses in Delaware. Mr. Mashioff's predecessor as sales representative for Delaware, Bruce Wright, was a resident of Delaware.

Pilkington Barnes–Hind, Ltd., ("PBH"), like Visioncare, is an indirect wholly owned subsidiary of Pilkington PLC. PBH is an English corporation with headquarters in Southampton, England. It has no offices or facilities in Delaware, or anywhere else in the United States.

PBH manufactures Natural Touch lenses at its Southampton facility pursuant to a written contract with Visioncare. The contract states that Visioncare will purchase its anticipated requirements from PBH, and that PBH certifies that it is aware of the intended use of the products, and warrants that they are fit for that use. PBH also agrees to defend Visioncare against any patent suit filed against Visioncare relating to Natural Touch lenses, and to indemnify Visioncare against any liability arising in connection with such a suit. Docket Item 51, Exhibit M ("D.I._").

Subsidiaries of Pilkington PLC own several patents related to the Natural Touch lenses. Pilkington Visioncare Holdings, Inc., a Delaware corporation that is the parent corporation of Visioncare, holds certain U.S.

patents related to Natural Touch lenses. Pilkington Brothers, Ltd., the parent company of Pilkington Visioncare Holdings, Inc., holds one European patent. Visioncare owns the remaining U.S. and foreign patents related to Natural Touch lenses. (D.I. 65). Visioncare performed the research and development activities related to Natural Touch lenses at the Sunnyvale facility. (D.I. 24, p. 5).

Plaintiff alleges that Visioncare, PBH and other affiliated corporations are part of the "PBH group," which acts like a unified business, and not like independent corporations. Evidence of the existence and activities of the "PBH group" includes statements of an employee showing that she considers herself to be employed by the PBH group, a statement by Visioncare's Vice President of Reporting and Analysis that Visioncare's financial data are consolidated with PBH's data, and a letter from Visioncare's Director of Public Relations indicating that the PBH companies act as a unified team under the leadership of Pilkington PLC. (D.I. 51, Ex. B, C, I).

## DISCUSSION

Defendant Pilkington Barnes–Hind Ltd. has moved to dismiss the claims against it on the ground that it is not subject to the personal jurisdiction of this Court.

■ This motion requires the Court to undertake a two step inquiry. The Court first must determine whether the long arm statute of the forum state permits the exercise of jurisdiction. If the statute permits jurisdiction, the Court must then determine whether the exercise of jurisdiction satisfies due process. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293 (3rd Cir.1985).

### I. *The Delaware Long–Arm Statute*

■ The Delaware long-arm statute, 10 *Del.C.* § 3104(c), reads in relevant part as follows:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative, who in person or through an agent: (1) Trans-

acts any business or performs any character of work or service in the State....

It is apparent that PBH's actions provide few, if any, contacts with Delaware. However, PBH does not dispute the fact that Visioncare has committed more than enough acts to subject Visioncare to the jurisdiction of Delaware courts. The contested issue is whether Visioncare acted as PBH's "agent" within the meaning of § 3104(c). If an agency relationship existed between the two companies, then PBH is amenable to suit in Delaware.

PBH argues that it has no control over the actions of Visioncare, and that an agency relationship cannot exist without such control. It is true that a person who is controlled by a principal may be deemed an agent. However, the Delaware courts have made clear that as used in § 3104, the word "agent" is not constricted to that one definition. The long-arm statute "is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Hercules Inc. v. Leu Trust and Banking,* 611 A.2d 476, 480 (Del.1992). Delaware courts have found that an agency relationship may exist between corporate affiliates with close business ties, and that a conspirator accepts all coconspirators as agents.

### A. *Affiliates*

If PBH had both manufactured and distributed the accused products, there would be no doubt that it would be subject to jurisdiction in Delaware. PBH argues that it is shielded from jurisdiction because the tasks of manufacturing and distributing the product were divided between independent corporations: PBH and Visioncare. However, both corporations are wholly owned subsidiaries of Pilkington PLC, and they apparently operate in lockstep as part of a larger PBH business group. The affidavits show that the business strategies and financial statements of the defendant companies are analyzed as a unit, and these companies present themselves as a unified entity to their employees and to the marketplace. (D.I. 51, Ex. B, C, I). Many of the patents relating to Natural Touch lenses are owned by Vision-

care, and it performed the relevant research in its Sunnyvale facility. However, although Visioncare appears to have much better information on the relevant technology, PBH has agreed, in a written contract, to indemnify Visioncare in all patent suits arising out of sales of Natural Touch lenses. It seems unlikely that truly independent companies would come to such an arrangement.

The fact that the PBH group chooses to divide tasks between Visioncare and PBH is not relevant here. In *Waters v. Deutz Corp.,* 460 A.2d 1332 (Del.Super.1983), the court adopted the following passage from a California case:

> Regie [a French corporation] might choose to arrange its marketing process through a hierarchy of its own agents and employees. Then, by establishing agents in California to sell its products, it would undoubtedly be amenable to suit in this state. For reasons of its own it chooses to market its products through a wholly-owned American subsidiary and a network of independently-owned distributorships and dealerships. These choices on its part effect little, if any, alteration in the jurisdictional situation. The "contacts" exist one way or the other and for precisely the same purpose. The differences are differences only in form and description.

*Waters,* 460 A.2d at 1337 (quoting *Regie Nationale Des Usines Renault v. Superior Court,* 208 Cal.App.2d 702, 25 Cal.Rptr. 530 (Cal.App.1962)).

*Waters* makes clear that the acts of Visioncare may be attributed to PBH because of their close corporate and business connections. For the purpose of jurisdiction, PBH and Visioncare may be considered two arms of the same business group in their attempt to achieve the common goal of selling lenses in Delaware and other markets. Visioncare is therefore PBH's agent, and personal jurisdiction over PBH is proper as a "person" that transacts business in Delaware through an agent. 10 *Del.C.* § 3104(a) (a corporation is a "person").

It makes no difference that a parent-subsidiary relationship is not present. It is enough that both Visioncare and PBH are wholly owned affiliates of Pilkington PLC.

*See Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1463 (D.Del.1991).

### B. *Conspiracy*

The Delaware Supreme Court has "defined 'agent' broadly to include not only a non-resident defendant's formal agents but also a defendant's coconspirators." *Hercules,* 611 A.2d at 481. Here, PBH and Visioncare allegedly entered a conspiracy to infringe plaintiff's patent rights, and therefore Visioncare acted as the agent of PBH.

■ Wesley–Jessen has not accused defendants of any criminal behavior, but such an allegation is not necessary. A "conspiracy" can be found in a civil case. In *Hunter Engineering,* a civil case relied on by the court in *Hercules,* there were no allegations of criminality, and the court held for jurisdictional purposes that the defendants were members of a conspiracy. *See Instituto Bancario Italiano v. Hunter Eng. Co.,* 449 A.2d 210 (Del.1982) (agreement to issue an allegedly improper stock dividend held to be a "conspiracy"). Wesley–Jessen alleges, in essence, that "the defendants acted willfully to damage the property interest of the plaintiff. That factual base is sufficient to litigate." *Id.* at 226, fn. 23.

■ *Hercules* sets out a five part test for determining whether a conspirator is subject to jurisdiction in Delaware.

> Specifically, a non-resident conspirator is subject to the jurisdiction of the Delaware courts if a plaintiff can show that: (1) a conspiracy ... existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Hercules,* 611 A.2d at 482.

The facts in this case satisfy all five elements. PBH sold allegedly infringing lenses to Visioncare. The warranty agreement is

evidence that PBH knew and approved of the fact that Visioncare sold the lenses in Delaware and elsewhere. In effect, plaintiff alleges that a conspiracy to infringe Wesley–Jessen's patents existed, and that PBH and Visioncare are parties to that conspiracy.

It is clear from the record that Visioncare engaged in active measures to sell the accused products in Delaware, and that it made sales in the state as a direct and foreseeable result of these efforts. It is also clear that PBH knew or should have known that Visioncare sold the products in Delaware.

Under the conspiracy doctrine set out in *Hercules* and *Hunter,* Visioncare acted as PBH's agent, and the Court therefore has jurisdiction over PBH.

### C. *Applied Biosystems*

In *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458 (D.Del.1991), the court held that the defendant was not subject to personal jurisdiction. PBH argued at length that the Court should adopt this holding. However, *Applied Biosystems* supports the exercise of jurisdiction here. In *Applied Biosystems,* the court held that the close corporate relations between "Inc." and "Limited" and "Holding" made Inc. the agent of the other companies. However, Inc. had committed so few acts in Delaware that even when these contacts were aggregated with the contacts of defendants Limited and Holding, there were insufficient contacts to permit the exercise of jurisdiction.

Here, as in the *Waters* and *Applied Biosystems* cases, the Court finds that the close corporate relations between the relevant companies permit the actions of a corporation to be attributed to its affiliate. However, while Inc. had almost no relevant contacts with Delaware, Visioncare has engaged in extensive sales efforts in Delaware. This difference in facts mandates a holding that jurisdiction exists here.

### II. *Due Process*

Having established that jurisdiction is proper under Delaware law, the Court must now determine whether jurisdiction is consistent with Due Process.

A court may not exercise jurisdiction unless "certain minimum contacts exist between the nonresident defendant and the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Max Daetwyler,* 762 F.2d at 293 (*quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). PBH has made many sales of the accused products in California, knowing and approving of the fact that Visioncare would resell the products in other states across the nation, including Delaware.

These contacts are sufficient to uphold jurisdiction. *Horne v. Adolph Coors Co.,* 684 F.2d 255 (3rd Cir.1982) (finding jurisdiction under similar facts). "Where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473–474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citation omitted).

Furthermore, PBH could well expect to be haled into court in Delaware. PBH entered an indemnity agreement with Visioncare in which PBH stated that it was aware of the use of the accused products, and that it agreed to defend and indemnify Visioncare in any patent action arising out of a resale of the lenses. (D.I. 51, Ex. M). It appears that if Wesley–Jessen had not joined PBH as a defendant, Visioncare could force PBH to defend this suit and shoulder any liability imposed. In such a circumstance, PBH would not have any colorable claim that this Court lacked jurisdiction. Therefore, PBH had "fair warning" that the sale of the accused products could "subject them to the jurisdiction of a foreign sovereign." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, (*quoting Shaffer v. Heitner,* 433 U.S. 186, 215, 97 S.Ct. 2569, 2585, 53 L.Ed.2d 683 (1977)).

Exercising personal jurisdiction over PBH is consistent with due process of law.

### CONCLUSION

For these reasons, the Court finds that personal jurisdiction over PBH is proper

pursuant to the Delaware long-arm statute as limited by the Due Process Clause of the United States Constitution. The Court will, therefore, deny PBH's motion to dismiss for lack of personal jurisdiction.