**ICT PHARMACEUTICALS, INC., Plaintiff,**

v.

**BOEHRINGER INGELHEIM PHAR-MACEUTICALS, INC., Boehringer Ingelheim Corporation, Boehringer Ingelheim GmbH, Boehringer Ingelheim Pharma, KG and Boehringer Ingelheim Austria GmbH, Defendants.**

Civ.A. No. 00–1002–SLR.

United States District Court, D. Delaware.

June 22, 2001.

M. Duncan Grant, Andrea B. Unterberger, Joseph S. Naylor, Pepper Hamilton LLP, Wilmington, DE, for plaintiff, of counsel, Rolf Stadheim, Joseph A. Grear and George C. Summerfield, Stadheim & Grear, Ltd., Chicago, IL.

Michael D. Goldman, Philip A. Rovner, Potter Anderson & Corroon LLP, Wilmington, DE, for defendants Boehringer Ingelheim GmbH, Boehringer Ingelheim Pharma, KG, °Boehringer Ingelheim Austria, GmbH, of counsel, Jonathan A. Marshall, Jennifer Gordon, and Anthony M. Insogna, Pennie & Edmonds, LLP, New York City.

## MEMORANDUM OPINION

ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff ICT Pharmaceuticals, Inc. ("ICT")[1] filed this action on November 30, 2000 against defendants Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), Boehringer Ingelheim Corporation ("BIC"), Boehringer Ingelheim, GmbH ("BI"), Boehringer Ingelheim Pharma, KG ("BI Pharma") and Boehringer Ingelheim Austria, GmbH ("BI Austria")[2] alleging infringement, or inducement of infringement, of United States Patent Nos. 4,980,-281; 5,688,655; and 5,877,007. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338. Currently before the court is a motion to dismiss for lack of personal jurisdiction filed by defendants BI, BI Pharma and BI Austria. (D.I.7) For the following reasons, the motion to dismiss is granted.

## II. BACKGROUND

The record demonstrates the following facts, essentially undisputed.

### A. The Moving Defendants

BI is a German corporation organized and existing under the laws of the sovereign nation of Germany. Its principal place of business is in Ingelheim am Rhein, Germany. It is a wholly-owned subsidiary of C.H. Boehringer Sohn, a privately-owned German corporation. (D.I. 8, Ex. A at ¶ 3)

BI Pharma is a German limited partnership organized and existing under the laws of the sovereign nation of Germany. Its principal place of business is in Ingelheim am Rhein, Germany. It is owned by C.H. Boehringer Sohn and Dr. Karl Thomae, GmbH, both of which are German corporations. (D.I. 8, Ex. B at ¶ 3)

Neither BI nor BI Pharma is currently (or ever has been) qualified, authorized, or otherwise chartered, registered or licensed to conduct or transact business in the State of Delaware. (D.I. 8, Ex. A at ¶ 8, Ex. B at ¶ 8) Neither defendant owns or leases any property (real or personal) in the State of Delaware. (D.I. 8, Ex. A at ¶ 10, Ex. B at ¶ 10) BI and BI Pharma do not have any office, telephone, or telephone listing in Delaware; do not maintain any bank accounts in Delaware; have not paid taxes or franchise fees in Delaware; have never designated anyone in Delaware to accept legal service of process on their behalf; and have never commenced any legal action or proceeding or been named as defendants in any action in Delaware (except the instant litigation).

Neither BI nor BI Pharma has an ownership interest in any of its codefendants. (D.I. 8, Ex. A at ¶¶ 14–17, Ex. B at ¶¶ 14–17) Both of the moving defendants have their own boards of directors, corporate books, employees, assets and business operations. (D.I. 8, Ex. A at ¶ 13, Ex. B at ¶ 13) The moving defendants have separate financial audits and maintain separate bank accounts. Neither of the moving defendants pays the salaries or other expenses, and is not liable for losses, of its codefendants. (D.I. 8, Ex. A at ¶ 18, Ex. B at ¶ 18)

### B. The Boehringer Ingelheim Corporate Family

The patents at issue relate to cell-based assay research. Plaintiff ICT alleges that

---

1. Although plaintiff apparently has changed its corporate name, the court will refer to it as ICT, consistent with the briefing on this motion.

2. Because ICT does not oppose the dismissal of the claims against BI Austria without prejudice, the court will not discuss this defendant further.

defendants discovered the use of the product Mobic as a COX–2 inhibitor using the accused cell-based assay research. It is undisputed that the product Mobic has been approved for sale in the United States as a COX–2 inhibitor. (D.I.24, Exs.A, F) There is also evidence of record that Mobic is marketed and sold throughout the United States, including in Delaware. (D.I.24, Exs.B, C) ICT acknowledges that the moving defendants are not directly involved in such sales, but argues that their indirect involvement nonetheless is sufficient to justify the assertion of personal jurisdiction over said defendants.

The court has gleaned the following facts from the record as to how the marketing and sale of Mobic in Delaware relates to the moving defendants.[3] The active ingredient for Mobic is manufactured in a Boehringer Ingelheim facility in Italy. It then is sold to Boehringer Ingelheim International, GmbH ("BI International"), a company with no employees. BI Pharma, serving as the contract manufacturer of Mobic on behalf of BI International, converts the active ingredient into tablets at its facilities. The tablets are next shipped to the Roxanne Labs in Columbus, Ohio, a facility owned by codefendant BIC. Roxanne Labs, serving as the contract manufacturer for BIPI, packages the tablets for sale in the United States. The finished products are then sold to codefendant BIPI, who ships and invoices the products to a third party for sale to the public. The product is copromoted by BIPI and the third party through sales representatives employed by both BIPI and the third party. It is averred that all of these transactions are conducted through arms-length negotiations. The court notes in this regard, however, that employees of BI represent BI International and that the same individual officer of BIC represents both BIC and BIPI during the course of the various negotiations.

The local management of BIPI made the decision to sell Mobic in the United States and to establish the sales policy for that product. BIPI has a license from BI International to sell Mobic in the United States, as well as to receive technical information about the licensed product. Because BI International has no employees, the technical information is provided through BI. The board of directors of BI has been described as coordinating the worldwide activities of all the Boehringer Ingelheim corporate family. The BI board operates through multiple committees, e.g., research, development and medicine ("RD & M"); operations; sales; finance; and human resources. The RD & M committee, for example, determines what research and development projects should be pursued and by whom. The sales committee has an advisory role, collecting and distributing information. The operations committee makes the decision of what should be produced in what part of the world. The finance committee reviews and approves each corporation's budget. (D.I. 24, Ex. C at 64–5) It is averred that the RD & M committee can make recommendations as to whether a product can be sold in a particular market, but cannot prevent local management of a Boehringer Ingelheim corporation from pursuing a sales policy it has approved.

### III. STANDARD OF REVIEW

■ Although plaintiff ICT is entitled to have all reasonable inferences drawn in its favor, it bears the burden of alleging facts sufficient to make a *prima facie* showing

---

**3.** Unless otherwise noted, the facts recited are culled from the deposition of Holger Huels.

(D.I.24, Ex. F)

of personal jurisdiction over defendants BI and BI Pharma. *See Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1462 (D.Del.1991). To satisfy this burden, plaintiff must present facts which "establish with reasonable particularity" that defendants are amenable to service of process under Fed.R.Civ.P. 4(e)(1) and the Delaware long-arm statute, 10 Del.C. § 3104(c). *Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 193 (D.Del.1996). If service of process can be accomplished, plaintiff must further demonstrate that an assertion of jurisdiction would comport with constitutional notions of due process. *See Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 293 (3d Cir.1985).

The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent, *inter alia:*

(1) Transacts any business or performs any character of work or service in the State;

. . .

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

10 Del.C. § 3104(c). The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156–57 (Del.Super.1997). In cases such as the one at bar, involving nonresident corporations with no direct contacts with the State, the scope of the long-arm statute has been analyzed under the rubric either of agency theory or stream of commerce theory.[4]

The court in *Wesley–Jessen Corp. v. Pilkington Visioncare, Inc.,* 863 F.Supp. 186 (D.Del.1993), for instance, applied agency principles in concluding that personal jurisdiction could be asserted over an English corporation. In its analysis, the court noted that the domestic and foreign defendants were wholly owned affiliates of the same corporation, that the business strategies and financial statements of the defendant companies were analyzed as a unit, and that these companies presented themselves as a unified entity to their employees and to the marketplace. For the purpose of jurisdiction, the court considered the defendants as "two arms of the same business group in their attempt to achieve the common goal of selling [contact] lenses in Delaware and other markets." *Id.* at 189. The court concluded that the domestic defendant served as the foreign defendant's agent, thus conferring personal jurisdiction over the foreign defendant "as a 'person' that transacts business in Delaware through an agent." *Id.*

---

4. The court acknowledges that the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done. The court further acknowledges that, absent application of the above theories, plaintiff cannot satisfy the requisite contacts under the specific jurisdiction provisions of 10 Del.C. § 3104(c)(1) or (3), because there is no indication of record that the moving defendants performed any acts in Delaware related to plaintiff's claims. Likewise, the statutory requirements for general jurisdiction under § 3104(c)(4) have not been addressed by the record, as there is no indication that the moving defendants engaged in sufficient activities in Delaware to establish a "general presence" during the relevant time frame. *See Boone,* 724 A.2d at 1156.

■ The stream of commerce theory has been embraced by the courts in *Boone,* 724 A.2d at 1156, and *Wright v. Am. Home Prods. Corp.,* 768 A.2d 518, 529 (Del.Super.2000). "The theory requires that there be evidence of some intent or purpose on behalf of the manufacturer to serve the Delaware market.... Only when the manufacturer's product enters the forum state and injures a consumer therein is it acceptable to exercise jurisdiction over the manufacturer under this theory." *Boone,* 724 A.2d at 1157. In *Boone,* the court found that the foreign manufacturer had "exhibited an intent and purpose to serve the Delaware market" by engaging an exclusive distributor who solicited business

> from the Country as a whole, including Delaware. The result of this solicitation, according to plaintiff, is that Partek earned at least $270,000 from its sales of asbestos and was shipping up to 50 tons per month of asbestos into this State over the course of ten years. Thus, not only did Partek implicitly solicit business from Delaware, it also derived substantial revenue from Delaware and engaged in a persistent course of conduct in this State.

*Id.* at 1158. *See also Wright,* 768 A.2d at 532 (citing "French defendants' continuing involvement in the manufacture, distribution, regulation and use of the drugs they licensed the American entities to manufacture and sell" as demonstrating purposeful introduction of their products into United States); *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993) (finding that shipment of products by distributors into Delaware was part of a general business plan, directed by nonresident defendant, to solicit business in Delaware and deliver products to customers in Delaware, demonstrating "purposeful availment of the protections of Delaware law").

■ Once the court has concluded that the Delaware long-arm statute confers jurisdiction over a nonresident defendant, the court must further analyze whether asserting jurisdiction is consistent with the Due Process Clause of the Constitution. The United States Supreme Court in *Asahi Metal Indus. Co., v. Super. Ct. of Cal., Solano County.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), has explained that

> [t]he "substantial connection" ... between the defendant and the forum State necessary for a finding of minimum contacts must come about by **an action of the defendant purposefully directed toward the forum State....** The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* at 112, 107 S.Ct. 1026 (citations omitted). If the court finds the requisite minimum contacts with the forum State, the final determination is whether the assertion of personal jurisdiction is reasonable and fair, a determination that depends on an evaluation of several factors.

A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." ... The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.

*Id.* at 113–114, 107 S.Ct. 1026 (citations omitted).

## IV. DISCUSSION

█ Plaintiff ICT argues that the assertion of personal jurisdiction over the moving defendants is reasonable and fair based on the "close relationship between all of the Boehringer Ingelheim companies," including BI and BI Pharma. (D.I. 24 at 4) In this regard, ICT highlights the following facts as establishing the requisite nexus between the moving defendants and the State of Delaware:

- BI and Pharma are both integral members of the larger Boehringer Ingelheim corporate family, which is engaged in the worldwide research, development, manufacture, marketing, and sales [of various products], the coordination of which is the responsibility of BI's board of directors;

- BI is the licensor **in fact** of numerous products to defendant [BIPI] for, inter alia, the marketing and sale of those products throughout the United States;

- Under its license of the various Boehringer products, [BIPI] is indemnified

against any third-party claim for patent infringement; and

- [BI] Pharma manufactures the product Mobic for sale in the United States, including Delaware.

(D.I. 24 at 2) (emphasis added) ICT concludes that, "[t]o the extent that jurisdiction is proper over BIC and [BIPI] as a result of sales made by those companies in this Judicial District, jurisdiction would likewise be proper over BI and [BI] Pharma because of this close relationship." (D.I. 24 at 4)

There apparently is no dispute that BIC and BIPI have purposefully directed their activities toward Delaware and have benefitted from so doing. The only question is whether ICT has put forward sufficient facts to justify the attribution of these activities to the foreign affiliates under either agency principles or the stream of commerce approach. In support of its position, ICT in effect is asking the court to look behind corporate formalities and find licenses "in fact" and contracts "in fact." The court declines to do so.

The court recognizes that the Delaware long-arm statute has been liberally construed in the cases cited above. But in the cases cited, the conduct of a resident defendant has been attributed to a nonresident defendant only where there has been at least a direct connection between the two defendants.[5] To put the point differently, in the absence of a direct contact between the nonresident defendant and the forum State, the courts have at least demanded a direct contact between the resident and nonresident defendants. For instance, in *Wesley–Jessen*, the English defendant manufactured the product at issue "pursuant to a written contract with" the resident defendant. 863 F.Supp. at 187. In *Boone*, the nonresident defen-

---

**5.** This determination is based on the facts as   described in the various decisions.

dant/foreign manufacturer directly "engaged" the resident defendant/domestic distributor and directly benefitted from such distribution. 724 A.2d at 1158. In *Wright,* the foreign defendants directly licensed the American entities. *See* 768 A.2d at 528. And in *Thorn EMI,* the nonresident defendant engaged an exclusive sales representative and several distributors who solicited business in Delaware. *See* 821 F.Supp. at 273.

The case at bar is one step removed from the scenarios described above. This is not a case where the Boehringer Ingelheim corporate family has simply divided the business of, e.g., manufacturing and distributing between independent corporations, as was the case in *Wesley–Jessen.* This is a case where the corporate affiliates do not even have direct legal obligations. While it may be elevating form over substance, the court will not lightly set aside corporate formalities in order to hail a foreign corporation into this judicial district. In the absence of direct authority supporting ICT's position, and without facts that warrant the extraordinary remedy of piercing the corporate veil, the court concludes that BI and BI Pharma are not subject to jurisdiction in Delaware under either § 3104 or the constitutional notions of due process.

## V. CONCLUSION

For the reasons stated, the motion to dismiss filed by defendants BI, BI Pharma and BI Austria is granted. An appropriate order shall issue.