MERCK & CO., INC., Plaintiff,

v.

BARR LABORATORIES,
INC., Defendant.

No. CIV.A. 01–597–JJF.

United States District Court,
D. Delaware.

Jan. 2, 2002.

Mary B. Graham and Maryellen Noreika, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Howrey Simon Arnold & White, LLP, Houston, Texas (John F. Lynch, Nicolas G. Barzoukas, and Stephen E. Edwards, of counsel) for the Plaintiff.

Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, Delaware, Williams & Connolly LLP, Washington, DC (Douglas R. Marvin, Glenn J. Pfadenhauer, George A. Borden, and Jana D. Jobes, of counsel), Samuel L. Fox, Robert C. Millonig, and Heidi L. Kraus, Sterne, Kessler, Goldstein & Fox P.L.L.C., Washington, DC, for the Defendant.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is a Motion To Dismiss filed by Defendant Barr Laboratories, Inc. ("Barr"). (D.I.18). For the reasons discussed, the motion will be granted.

## PROCEDURAL HISTORY

In June 2001, Barr filed an Abbreviated New Drug Application ("ANDA"), pursuant to 21 U.S.C. § 355(j)(2), seeking approval from the Food and Drug Administration ("FDA") to market alendronate sodium tablets, 70 mg, a generic equivalent of Merck & Co. Inc.'s ("Merck") FOSAMAX®. (D.I. 19 at 1). The FDA's Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book") lists ten unexpired patents for FOSAMAX® tablets: United States Patent Nos. 4,621,077, 5,358,941, 5,681,590, 5,804,570, 5,849,726, 5,994,329, 6,008,207, 6,015,801, 6,090,410, and 6,225,294. (D.I. 19 at 1). Barr's ANDA contained a Paragraph IV certification indicating that the ten unexpired patents are either invalid, unenforceable, or will not be infringed by Barr's ANDA product. (D.I. 19 at 2). Presently, Barr has not manufactured or sold alendronate sodium, 70mg tablets. (D.I. 26 at 3).

On August 31, 2001, Merck filed the instant action, as well as an identical complaint in the United States District Court for the Southern District of New York, alleging infringement of nine patents included in the Orange Book for FOSAMAX®. (D.I. 25 at 3). The complaint filed in the instant action was duly served. (D.I. 25 at 3). The complaint filed in the Southern District of New York was not served. (D.I. 25 at 3). Nonetheless, in the Southern District of New York, on October 22, 2001, Barr answered and counterclaimed. (D.I. 26 at 1). Presently, Merck has answered the counterclaims and discovery has begun pursuant to Judge Buchwald's November 30, 2001 scheduling conference. (D.I. 26 at 1). On October 26, 2001, Barr filed the instant Motion To Dismiss for lack of personal jurisdiction and improper venue [1] pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3). (D.I.18).

## STATEMENT OF FACTS

Barr is a pharmaceutical company engaged in developing, manufacturing, and marketing generic and proprietary pharmaceuticals nationwide. (D.I. 19 at 3). Barr has a principal place of business in Pomona, New York, and operations in New York, New Jersey, Ohio, Pennsylvania, and Virginia. (D.I. 19 at 3). Barr does not maintain offices, facilities, local telephone listings, or bank accounts in Delaware, and similarly, does not own or lease any real property or employ any persons in Delaware. (D.I. 19 at 3). Barr is not registered with the Secretary of State to do business in Delaware. (D.I. 26 at 3).

Barr has two licenses issued by the state of Delaware to sell drugs in and through Delaware. (D.I. 25 at 5). Since January 1, 1999, Barr has directly sold products to four customers in Delaware. (D.I. 19 at 4). In 1999, Barr's total revenue from these Delaware customers was $404,019.47 and in 2000, the total Delaware revenue was $586,927.47, which accounts for approximately 0.13% of Barr's 2000 gross revenue. (D.I. 19 at 4). Additionally, Barr sells its drug products to national mail order pharmacies, retail drugstores, and pharmaceutical companies, with customers in Delaware, as well as to Happy Harry's, a Delaware retail pharmacy chain. (D.I. 25 at 4). Barr has a National Account Manager in charge of the Delaware accounts, including Happy Harry's, who visits Delaware as often as three times per

---

1. Because the Court concludes that Barr is not subject to personal jurisdiction in Delaware, the Court will grant the Motion To Dismiss pursuant to Rule 12(b)(2) and will not examine venue under Rule 12(b)(3).

year. (D.I. 25 at 5). Additionally, Barr makes yearly payments to Delaware Medicaid based upon the amount of Barr drugs sold that year. (D.I. 25 at 5).

Barr has a contract with LHSI, a Delaware corporation, "for the refrigerated storage and nationwide distribution to wholesalers, hospitals, and organ donor centers" of Viaspan®, a Barr product, until July 2003. (D.I. 19 at 4). Additionally, Barr has a wholly-owned subsidiary in Delaware, BRL, Inc., which does research and development of pharmaceuticals. (D.I. 25 at 5).

Prior to filing the instant action, Merck had instituted similar actions against Teva Pharmaceuticals USA, Inc. and Zenith Goldline Pharmaceuticals, Inc. alleging infringement of U.S. Patent No. 4,621,077. (D.I. 25 at 6). These cases, which have been consolidated, are presently pending before this Court. (D.I. 25 at 6).

## STANDARD OF REVIEW

■ In order for personal jurisdiction to exist over a defendant two requirements, one statutory and one constitutional, must be satisfied. First, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Fed.R.Civ.P. 4(e). Thus, the Court must determine whether there is a statutory basis for finding jurisdiction under the Delaware long-arm statute. *See* 10 Del. C. § 3104(c). Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of jurisdiction violates Barr's constitutional right to due process. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. *Provident National Bank v. California Federal Savings & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir.1987). To satisfy this burden, the plaintiff must establish either specific jurisdiction or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state; general jurisdiction arises when the defendant has continuous and systematic contacts with the state, irrespective of whether the defendant's connections are related to the particular cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Because Merck concedes that specific jurisdiction is not available over Barr in Delaware in the instant action, the Court will only consider the facts under a general jurisdiction analysis. (D.I. 25 at 8).

## DISCUSSION

### I. Delaware Long Arm Statute

■ In support of its motion, Barr contends that the totality of Barr's contacts with the state of Delaware do not reach the level of persistence and substantiality required to assert general jurisdiction under the Delaware long-arm statute. (D.I. 19 at 7). Specifically, Barr contends that its revenue derived from Delaware, totaling less than 0.13% of its yearly revenue, is not substantial enough to satisfy the Delaware long-arm statute. (D.I. 19 at 9). Barr further contends that these Delaware sales, which were acquired without Delaware offices, telephone listings, or bank accounts and without any advertising directed at Delaware, are not sufficient to establish a basis for general jurisdiction. (D.I. 19 at 10). Additionally, Barr con-

tends that its contract with LHSI, a Delaware corporation, for the storage and nationwide distribution of Viaspan® is not sufficient to establish jurisdiction because the contract has a national focus and is not aimed at the solicitation of business specifically from Delaware customers. (D.I. 19 at 10).

In opposition, Merck contends that Barr is subject to general jurisdiction under the Delaware long-arm statute. (D.I. 25 at 11). Specifically, Merck contends that Barr regularly does business in Delaware because it maintains two licenses in Delaware which allow it to distribute and sell its products in Delaware, makes yearly payments to Medicaid based on the amount of Barr drugs dispensed, sells its drugs directly to Happy Harry's, on a weekly basis for retail sale in Delaware, and sells and distributes approximately $1.2 million of Viaspan every month in Delaware through its agent, LHSI. (D.I. 25 at 11). Merck further contends that Barr derives substantial revenue from its drugs that are used in or consumed in Delaware. (D.I. 25 at 13). Specifically, Merck contends that in 1999 and 2000 Barr derived approximately $991,000 from its Delaware sales. (D.I. 25 at 13). Additionally, Merck contends that Barr's national generic sales, to retail pharmacies, mail order pharmacies, and HMOs, made without geographic restrictions, result in substantial sales, exceeding $1 million, in Delaware. (D.I. 25 at 13–14). Finally, Merck contends that an exercise of jurisdiction is proper because Barr places its goods in the stream of commerce with an intent and purpose to serve the Delaware market. (D.I. 25 at 21).

In reply, Barr contends that its activities in Delaware have not satisfied the Delaware long-arm statute. (D.I.26). First, Barr contends that it has not committed a tortious injury or tortious act within the meaning of the Delaware long-arm statute because Barr has not breached a duty and because the complaint does not seek damages. (D.I. 26 at 2–3). Barr further contends that it does not do business or solicit business in Delaware. (D.I. 26 at 4). Specifically, Barr contends its Delaware licenses are necessary to ship pharmaceutical products into a state but do not indicate that Barr is doing business in Delaware, particularly in light of the fact that Barr is not registered with the Secretary of State to do business in Delaware. (D.I. 26 at 5). Additionally, Barr contends that it maintains only one existing Delaware customer and does not solicit new customers in Delaware. (D.I. 26 at 5). Barr contends that its total Delaware sales revenue, totaling less than 0.13% of total revenue, is the only concrete estimate of how much of Barr's products are used or consumed in Delaware and is insufficient to justify an exercise of general jurisdiction. (D.I. 26 at 6). Finally, Barr contends in reply that jurisdiction under a "stream of commerce" theory would be inappropriate because the stream of commerce theory rests on a specific jurisdiction, not a general jurisdiction, rationale. (D.I. 26 at 14).

The Delaware Supreme Court has construed the long-arm statute broadly to confer jurisdiction to the maximum extent possible under the Due Process Clause. *Hercules Inc. v. Leu Trust and Banking Ltd.,* 611 A.2d 476 (Del.1992). However, the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis. *ICT Pharmaceuticals, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 147 F.Supp.2d 268, 271 (D.Del.2001). In relevant part the Delaware long-arm statute provides:

(c) As to a cause of action brought by any person arising from any of the acts

enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

. . . . .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; . . .

10 Del.C. § 3104(c)(4). The Delaware Supreme Court has interpreted 3104(c)(4) as a general jurisdiction provision, allowing for jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action.

■ Initially, the Court must determine if the alleged patent infringement is a tortious injury for the purposes of jurisdiction. In *Magid v. Marcal Paper Mills, Inc.*, the court defined a tortious act under § 3104(c) as an act "which involves a breach of duty to another and makes the one committing the at liable in damages." 517 F.Supp. 1125, 1130 (D.Del.1981). Because the Court of Appeals for the Federal Circuit has defined patent infringement as a tort, the Court concludes that the presently alleged patent infringement is a tortious act for the purposes of the Delaware long-arm statute, irrespective of allegations of damages. *See Carbice Corp. v. American Patents Development Corp.*, 283 U.S. 27, 33, 51 S.Ct. 334, 75 L.Ed. 819 (1931).

Secondly, the Court must determine if Barr regularly does or solicits business in Delaware. The Court concludes that Barr does not regularly do business in Delaware. Barr has no employees, local telephone listing, bank accounts, or real estate in Delaware. Barr has a license to sell pharmaceutical products in Delaware, but is not registered with the Secretary of State to do business in Delaware. Barr has one account manager for the existing Delaware customers, who visits Delaware at most three times per year. Moreover, the actions of LHSI, a Delaware entity with whom Barr has a contract, cannot be attributed to Barr because the Court is not persuaded that LHSI is an agent of Barr. (D.I. 26 at 4). Therefore, in the Court's view, Barr's contacts with Delaware, including the sale of drugs to Happy Harry's, are minimal and an insufficient basis to rest general jurisdiction upon.

The Court further concludes that Barr does not solicit business in Delaware. Barr does not advertise in Delaware, nor does its National Account Manager for Delaware solicit new customers. Accordingly, the Court concludes that Barr's conduct does not amount to regularly doing business or soliciting business in Delaware.

Finally, the Court must determine if Barr derives substantial revenue from services, or things used or consumed in Delaware. Although Delaware courts have broadly construed the term "substantial revenue," the Court concludes that Barr's revenue from things used or consumed in Delaware falls below the level required to exercise general jurisdiction. *See United States v. Consolidated Rail Corp.*, 674 F.Supp. 138, 144 n. 4 (D.Del.1987). The Court is not persuaded that Barr's sales to corporations with national distribution, including Delaware, should be added to Barr's Delaware sales figures because the nexus is too attenuated. Currently, Barr's Delaware revenue, comprising less than 0.13% of total revenue, is not substantial enough to warrant an exercise of general jurisdiction.

■ Moreover, the Court is persuaded that § 3104(c)(4), the general jurisdiction provision of the long-arm statute, does not

anticipate that placing a product into the stream of commerce would give rise to jurisdiction. In fact, the Delaware Superior Court stated in *Boone v. Oy Partek Ab* that the stream of commerce theory "rests on a specific rather than a general jurisdiction rationale." 724 A.2d 1150, 1156 (Del.Super.Ct.1997) *aff'd*, 707 A.2d 765, 1998 WL 138690 (Del.1998). The *Boone* court further stated that under a stream of commerce theory a defendant must still have "an intent or purpose to serve the Delaware market with their product." *Id.* at 1156. Only an intent to serve the Delaware market with a product that caused an alleged injury, that is a specific jurisdiction rationale, would be meaningful. In the instant case, Barr is not alleged to have placed a product that caused Merck injury into the stream of commerce, a fact which distinguishes this case from those that have applied a stream of commerce theory under § 3104(c)(4). *See Siemens Aktiengesellschaft v. LG Semicon Co.*, 69 F.Supp.2d 622 (D.Del.1999) (applying a stream of commerce theory under § 3104(c)(4) where the product placed in the stream of commerce was allegedly infringing).

In conclusion, the Court concludes that Barr's contacts and revenue in Delaware are minimal, and accordingly, insufficient to satisfy the requirements for jurisdiction under § 3104(c)(4) of the Delaware long-arm statute.

## II. Due Process

 In the alternative, Barr contends that even if jurisdiction were proper under the Delaware long-arm statute, an exercise of jurisdiction would be improper under the Due Process Clause. (D.I. 19 at 12). Barr contends that an exercise of general jurisdiction would be improper because Barr is not organized under Delaware law, is not registered as a Delaware entity, has no Delaware offices, facilities; or local telephone listing, has no bank accounts in Delaware, has no employees in Delaware, has no real property in Delaware, and has no agent for service of process or any other purpose in Delaware. (D.I. 19 at 14). Further, Barr contends that its sales in Delaware and its contract with LHSI, a Delaware corporation, are too minimal to establish continuous and substantial contacts within the purview of the Due Process Clause. (D.I. 19 at 14).

In opposition, Merck contends that the exercise of general jurisdiction over Barr is consistent with the requirement of due process. (D.I. 25 at 23). Specifically, Merck contends that Barr's jurisdictional contacts including the fact that Barr is licensed to distribute drugs in Delaware, the sale of Viaspan through LHSI, its agent, in Delaware, the solicitation of business from Happy Harry's, Delaware revenue totaling $991,000, and the operation of a wholly owned subsidiary in Delaware are sufficient minimum contacts with Delaware. (D.I. 25 at 26). Merck further contends that the exercise of general jurisdiction over Barr would be reasonable, and not burdensome to either party. (D.I. 25 at 28). Additionally, Merck contends that Delaware has an interest in adjudicating this case because Barr's business activities involve Delaware entities such as Happy Harry's and LHSI as well as individual Delaware residents who consume Barr's products. (D.I. 25 at 29). Finally, Merck contends that judicial economy would be served by adjudicating this case in Delaware because of the similar actions already pending before this Court. (D.I. 25 at 29).

In reply, Barr contends that its contacts with Delaware are insufficient to satisfy the high standard required for an assertion of general jurisdiction. (D.I. 26 at 7–12). Specifically, Barr contends that Delaware has no interest in adjudicating this

case because it does not involve Delaware plaintiffs and the artificial act of patent infringement is not related to Delaware. (D.I. 26 at 13). Barr further contends in reply the Court should not apply the reasonableness test because the Supreme Court has never applied the reasonableness test in a general jurisdiction case. (D.I. 26 at 15). However, Barr contends that if the Court should find the reasonableness test applicable, jurisdiction in Delaware would be unreasonable because the parties and their witnesses are more conveniently situated to New York, Merck would have the opportunity to litigate this action in New York, and finally, because Delaware has no interest in adjudicating this action. (D.I. 26 at 16).

▇▇▇▇ Due process requires that a defendant have certain minimum contacts with the forum state in order to ensure that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316. The United States Supreme Court has held that to maintain general jurisdiction over a foreign defendant, the facts must establish "continuous and systematic general business contacts" with the forum state. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868 (1984). Furthermore, the Court of Appeals for the Third Circuit has held that a plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction. *Provident,* 819 F.2d at 437 (3d Cir.1987).[2]

After considering the contacts Barr has with Delaware, the Court concludes that the requirements of due process are not satisfied because Barr's business contacts with Delaware and its residents are not continuous and systematic. Barr has not availed itself of Delaware resources in that Barr has no employees, bank accounts, or real estate in Delaware. Barr does not solicit business, through advertising or otherwise, in Delaware. The total revenue Barr derives from Delaware, approximately $991,000 annually, is less than one percent of Barr's total revenue. Barr has a license to sell pharmaceutical products in Delaware, but is not registered with the Secretary of State to do business in Delaware. Barr has one account manager for the existing Delaware customers, who visits Delaware at most three times per year, but does not solicit new customers. Furthermore, the Court is not persuaded that LHSI is an agent of Barr whose actions in Delaware should be attributed to Barr. (D.I. 26 at 4). Finally, although Barr wholly owns a subsidiary in Delaware, because the subsidiary is not the alter-ego or general agent of Barr, the Court concludes that mere ownership is insufficient to establish substantial activities in Delaware. *See Sears* 744 F.Supp. at 1306.

In light of Barr's insignificant contacts with Delaware the Court further concludes that Delaware has no interest in adjudicating this case. This case does not involve Delaware related claims or Delaware plaintiffs. In sum, the Court is persuaded that this case should proceed in New York where Merck has already filed an identical complaint, Barr has counterclaimed, and discovery has begun. The factors favoring adjudication of this dispute in New York overcome the convenience and judicial economy that may be achieved by this case proceeding in Delaware.

---

**2.** In fact, in *Sears, Roebuck & Co. v. Sears plc,* the court found that cases of general jurisdiction were extremely rare, citing only one 1952 case where the United States Supreme Court upheld jurisdiction based on a claim not related to the defendant's activities in the forum. 744 F.Supp. 1289, 1296 (D.Del.1990) *citing Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

## CONCLUSION

For the reasons discussed, the Court concludes that Barr is not subject to personal jurisdiction in Delaware and therefore, its motion to dismiss will be granted. An appropriate Order will be entered.

### *ORDER*

For the reasons discussed in the Memorandum Opinion issued with this Order, IT IS HEREBY ORDERED this 2 day of January 2002 that Defendant Barr Laboratories, Inc.'s Motion To Dismiss (D.I.18) is *GRANTED.*